*1381
 
 OPINION
 

 Per Curiam:
 

 FACTS
 

 On May 13, 1992, Linda Roberts, as guardian ad litem for Misty Andrae, filed a civil complaint against appellant Leslie J. Warner for battery, negligent and intentional infliction of emotional distress, sexual assault and negligence. On August 26, 1992, default was entered against Warner for failure to plead or otherwise defend as required by law.
 

 On October 6, 1992, the district court issued an order prohibiting Warner from disposing of any property in which he had a legal or equitable interest. On December 15, 1992, judgment was entered against Warner for damages in the amount of $440,000.
 

 A supplemental proceeding was held on January 14, 1993, where Roberts’ counsel questioned Warner regarding his assets. During this proceeding, Warner made various promises to provide documents and information and also invoked his alleged Fifth Amendment right not to answer on several occasions.
 

 On February 25, 1993, Roberts filed a motion to compel discovery and a motion for order to show cause (“motion”) protesting Warner’s failure to honor the order of October 6, 1992 (“order”) and his failure to follow through with promises made at the January 14, 1993 hearing. A subsequent hearing was held on September 17, 1993, apparently concerning Warner’s failure to provide the information as promised, under oath, during the January 14, 1993 proceedings. Since the hearing was not recorded, there is no transcript available for review. However, the contempt order reveals that during the September 17, 1993 hearing, Warner was held in contempt for eleven violations of the court’s orders, and that the court sanctioned him with a mandatory thirty days and a $500 fine on each of the eleven violations. The district court ordered the fines to be payable immediately and stated that “if the Defendant fails to pay these fines to the Washoe County Clerk, the fines are converted to Washoe County jail time
 
 *1382
 
 at the rate of $25 per day, or an additional 220 days in the Washoe County Jail.” Warner did not pay the fines, and they were converted to jail time.
 

 DISCUSSION
 

 On appeal, Warner argues that the district court imposed contempt charges solely because it believed the Fifth Amendment could not be asserted in a civil proceeding. However, in reading the contempt order together with the transcript of the January 14, 1993 supplemental proceedings, it is clear that the district court understood that the Fifth Amendment may be invoked in civil proceedings. Thus, the issue is not whether the Fifth Amendment is applicable to civil proceedings (as Warner states), but whether the Fifth Amendment privilege was properly invoked by Warner at the September 17, 1993 hearing.
 

 To determine whether Warner properly invoked the privilege, this court must consider the context in which the privilege was asserted.
 
 See
 
 Eastham v. Arndt, 624 P.2d 1159, 1162, 1165 (Wash. Ct. App. 1981). Since there was no record of the September 17, 1993 hearing, this court does not know exactly what kind of questions Warner refused to answer. However, the record on appeal supports the conclusion that during the September 17, 1993 hearing, Warner asserted his Fifth Amendment privilege in order to avoid being held in contempt for violating the order. Thus, the issue before this court is whether Warner’s invocation of the Fifth Amendment privilege was proper in order to avoid contempt charges.
 

 Warner may assert the privilege only if contempt charges are considered criminal prosecutions.
 
 See
 
 Blankenship v. O’Sullivan Plastics Corp., 109 Nev. 1162, 1165, 866 P.2d 293, 295 (1993). Whether a contempt charge constitutes a criminal prosecution depends on whether the contempt charge is civil or criminal in nature.
 
 See, e.g.,
 
 N. L. R. B. v. Trans Ocean Export Packing, Inc., 473 F.2d 612, 617 (9th Cir. 1973). The distinction between civil and criminal contempt is usefully defined in Marcisz v. Marcisz, 357 N.E.2d 477, 479 (Ill. 1976):
 

 Contempt proceedings, while usually called civil or criminal, are, strictly speaking, neither. They may best be characterized as
 
 sui generis,
 
 and may partake of the characteristics of both. [Citations omitted.] Proceedings in the nature of criminal contempt have been defined as those directed to preservation of the dignity and authority of the court, while it has been said that civil contempts are those prosecuted to enforce the rights of private parties and to compel obedience
 
 *1383
 
 to orders or decrees for the benefit of opposing parties. [Citations omitted.] These principles, while seemingly plain and adequate, are most difficult to apply. The line of demarcation in many instances is indistinct and even imperceptible. [Citations omitted.] A further guide may be found in the purpose of the punishment. Imprisonment for criminal contempt is inflicted as a punishment for that which has been done, whereas imprisonment for civil contempt is usually coercive and, as was said in the case of In re Nevitt, (8th Cir.) 117 F. 488, 461, “he [the contemnor] carries the key of his prison in his own pocket.”
 

 The United States Supreme Court has further clarified the distinction between civil and criminal contempt, explaining that since a civil contempt sanction is designed to coerce the contem-nor into complying with a court order, it must be conditional or indeterminate — that is, it must end if the contemnor complies. Hicks v. Feiock, 485 U.S. 624, 633 (1988). In contrast, a criminal contempt sanction is intended to punish the contemnor for disobeying a court order and, thus, must be determinate or unconditional. Such a sanction is not affected by any future action by the contemnor.
 
 Id.
 
 at 633-35.
 

 In the instant case, the contempt proceeding is both civil
 
 and
 
 criminal in nature. It is civil contempt because it was intended to protect the rights of Roberts and to compel obedience to the order for the benefit of Roberts. It is also criminal contempt because the punishment was not an effort to coerce obedience to the order, but rather a punishment for Warner’s refusal to obey the order. However, because the punishment was punitive (a set term of eleven months imprisonment) rather than coercive, we view the proceeding to be criminal in nature.
 
 See
 
 City Council of Reno v. Reno Newspapers, 105 Nev. 886, 893-94, 784 P.2d 974, 979 (1989). Thus, if Warner invoked the Fifth Amendment in order to avoid contempt charges, he should not have been found in contempt.
 

 Warner next contends that the district court erred by holding Warner in contempt eleven times. He contends that the contempt order exclusively held him in contempt for refusing to answer questions at the September 17, 1993 hearing. However, Warner misreads the contempt order. The September 17, 1993 hearing was held in response to Roberts’ allegations that Warner had violated the court’s order and had not fulfilled promises made at the January 14, 1993 proceedings. Apparently, at the hearing, Warner failed to present any evidence to contradict Roberts’ allegations and refiised to answer any questions. The contempt
 
 *1384
 
 order clearly states that Warner’s failure to respond to the questions left the court no alternative but to hold him in contempt on each of the instances of contempt
 
 alleged by Roberts in her motion.
 
 Thus, it is clear that the district court’s contempt order was based upon the instances of contempt alleged by Roberts in her motion. It is not entirely clear, however, from reading the contempt order, whether Warner’s refusal to testify at the September 17, 1993 hearing even constituted one of the eleven violations. Since this court does not know and cannot determine from the record whether any of the eleven violations is based on Warner’s refusal to testify, this matter must be remanded to the district court for findings concerning the basis for each of the eleven violations, with the instruction that any finding of contempt, based on Warner’s refusal to testify at the September 17, 1993 hearing, must be vacated.
 

 Warner finally insists that the district court inappropriately converted Warner’s fines into jail time without holding a proper hearing. This court has held that “[bjefore a defendant may be imprisoned for nonpayment of a fine, a hearing must be held to determine the present financial ability of the convict.” Gilbert v. State, 99 Nev. 702, 708, 669 P.2d 699, 703 (1983). In the present case, there is no record of what occurred at the September 17, 1993 hearing. Thus, it is unclear whether the
 
 Gilbert
 
 requirements were satisfied. Accordingly, the case must also be remanded for a
 
 Gilbert
 
 hearing in order to determine Warner’s financial ability to pay the fines levied against him.
 

 CONCLUSION
 

 For the reasons discussed above, we remand this matter so that the district court can identify the basis for each of the eleven violations, with the instruction that any sanction based upon Warner’s refusal to testify for fear of incriminating himself in future contempt proceedings must be vacated. This matter is also remanded for a
 
 Gilbert
 
 hearing regarding Warner’s ability to pay the contempt fines, thereby enabling the district court to determine the propriety of converting the fines into jail time.
 
 [1]
 

 [1]
 

 This shall be considered a final disposition of this appeal. Upon remand, if Warner takes issue with the district court’s ruling, it will be necessary for him to file a new notice of appeal. Despite this court’s remand, we emphasize that without a transcript of the September 17, 1993 hearing, we are unable to determine to what extent the district court may have fiilly satisfied the concerns expressed in this opinion. To the extent the district court’s contempt order .conforms to the law expressed in this opinion, it should be clear that the district court need not modify any such conforming aspect of its order.