OPINION
By the Court,
Rose, J.:
Appellant Tracy Vollmer (formerly Tracy Wallace) and respondent Pieter Wallace were married and had a son, Drake. *1017 After they divorced, Tracy gained physical custody of Drake, and she and Pieter shared joint legal custody. Around the time Tracy remarried, she and Pieter began to disagree about the amount of visitation Pieter should have. The dispute was taken before the district court, which established a visitation schedule and ordered certain abatements in Pieter’s child support obligation.
Tracy appealed. She claims that the district court failed to consider Drake’s best interests in establishing the visitation schedule, that the court erred in granting Pieter a reduction in his child support obligation for travel expenses connected to visitation, and that it erred in ordering visitation for Pieter’s mother without conducting a hearing.

FACTS

Tracy and Pieter were divorced on May 28, 1991, when their son, Drake, was less than a year old. They entered into a child custody and support and property settlement agreement, which the district court adopted in its divorce decree. Tracy and Pieter shared joint legal custody of Drake, and Tracy was awarded physical custody. Pieter received “reasonable rights of visitation” and was ordered to pay $250 per month in child support.
From the divorce until about September 1994, the parties agree that visitation occurred largely without problems. After Drake was about two years old, he began to stay overnight with Pieter, typically one or two nights a week. During the summer of 1994, Pieter was unemployed; he therefore paid only $100 a month in child support, but took care of Drake every weekday while Tracy worked.
In September 1994, Tracy remarried, and Pieter began a job with weekends off. He had worked weekends at his earlier job. The flexible visitation which occurred before ended. The parties arrived at an arrangement where Drake stayed with Pieter every other weekend. Initially, Drake also stayed overnight at Pieter’s on Wednesdays. Tracy then stopped the overnight stay on Wednesdays because she felt that Drake was too tired and cranky the next day at his preschool. Pieter was not satisfied with the visitation he could exercise. After discussions between the parties failed, Pieter filed a motion with the district court on January 27, 1995, to establish specific visitation. Pieter later withdrew his motion, but Tracy filed her own. The court therefore held a hearing on the matter on October 16, 1995.
A child psychologist hired by Tracy was the first witness at the hearing. After seeing Drake in January 1995, he felt that Drake might be too young for midweek overnight visitations. The psychologist evaluated Drake again in September 1995, and his opinion regarding Wednesday overnight visitation remained basi *1018 cally unchanged. The psychologist had never spoken to Pieter about Drake’s situation.
Tracy testified as follows. After Pieter began working weekdays with weekends off, he demanded to have Drake every weekend. When she refused and they argued, she told him to get an attorney. She denied ever threatening to withhold visitation if Pieter did not pay child support. On cross-examination, Tracy admitted that she told Pieter that he was in for a big court battle and that she would rather spend money than participate in mediation, which Pieter requested more than once. She also told Drake that because Pieter did not go to church, bad things would happen to Pieter and that Pieter did not take good care of Drake.
Pieter’s mother testified that Tracy called her after remarrying and threatened to cut Pieter out of Drake’s life regardless of the consequences to Drake.
Pieter testified to the following. In late September or early October 1995, Tracy threatened that Pieter would not see Drake if he did not immediately pay his child support for October. Pieter therefore opened an account with the district attorney’s office to keep a record of his support payments. Pieter stated that his new wife had two children and that when Drake stayed overnight, all the children went to bed around eight or eight-thirty in the evening, the same time as Drake’s bedtime at Tracy’s. Drake also took naps. Tracy told Pieter that he could not see Drake as much because Drake had a new family and dad and that Drake would learn to live with it. She also warned Pieter that litigation would cost him a lot of money and that she would ruin him. One time Drake asked Pieter why Pieter did not like God and said that his mother said that bad things would happen to Pieter if he did not go to church. At the end of his direct testimony, Pieter informed the district court that the month before he had received a job offer in Atlanta and that he was going to move there in early 1996.
The district court filed a memorandum of decision on October 24, 1995, and a judgment consistent with the memorandum on December 6, 1995. The court stated that the case was basically a dispute over whether five-year-old Drake should spend Wednesday nights with his father. It noted that Tracy opposed increased visitation “because she feels that Drake’s routine would become interrupted; that he has shown signs of fatigue when he returns from his father’s home; and that she feels that his schooling would suffer.” It found that Tracy had been “exercising control over Drake’s relationship with his father in a manner which has undermined the father-son relationship.” The court cited Tracy’s informing her son that his father was bad for not going to church and telling the boy that his father did not take good care of him. *1019 The court stated that Drake "deserves a better view of his father than his mother is giving him and if more visitation will do the trick, then more visitation it will be." It therefore granted overnight stays on Wednesdays.
In case Pieter moved to Atlanta, the court granted him the right to have Drake one weekend each month, the Thanksgiving holiday, half of the Christmas holiday, a week at Easter, and seven weeks each summer. It also reduced Pieter's monthly child support by $100 in any month that be traveled to Reno or that Drake traveled to Atlanta for visitation, and it completely abated child support during summer weeks that Drake spent in Atlanta. If Pieter could not arrange to have Drake for a weekend during a month, the court ordered that Drake stay with Pieter's mother that month. Sometime after entry of the court's judgment, Pieter moved to Atlanta.
DISCUSSION
The district court imposed the visitation schedule without adequate notice and hearing
NRS 125A.290(1)(a) provides:
Any order awarding a party a right of visitation of a minor child must:
(a) Define that right with sufficient particularity to ensure that the rights of the parties can be properly enforced and that the best interest of the child is achieved.
Matters of custody and support of minor children rest in the sound discretion of the trial court. Culbertson v. Culbertson, 91 Nev. 230, 233, 533 P.2d 768, 770 (1975). A court decision regarding visitation is a "custody determination." NRS 125A.040(2). It is presumed that a trial court has properly exercised its discretion in determining a child's best interest. Culbertson, 91 Nev. at 233, 533 P.2d at 770.
Tracy contends that the court failed to consider Drake's best interest in establishing visitation. She claims that the only evidence in the record militates against the midweek overnight visitation ordered. The issue regarding overnight visitation on Wednesdays has been rendered moot by Pieter's move to Atlanta. But Tracy also opposes the visitation schedule which requires Drake, "who has never spent more than two or three days away from [his mother], [to] fly across the entire country to spend seven weeks in a home he has never seen, with a parent he probably will not have been with for many months."
*1020 We agree that the district court abused its discretion in imposing a visitation schedule based on Pieter’s relocation to Atlanta without accepting evidence and hearing argument on the ramifications of such visitation. We do not question the court’s conclusion that Tracy had improperly attempted to interfere with Drake’s relationship with his father and that it was in Drake’s best interest to spend more time with his father. However, neither the court nor Tracy were apprised of Pieter’s move to Atlanta until late in the hearing. No evidence was presented and no arguments were heard regarding an appropriate visitation schedule given this new location, which was new to Drake and would require him to travel long distances to reach.
We conclude that the district court’s judgment in regard to visitation was precipitous and must be reversed. The court characterized the case before it as basically a dispute over whether Drake should spend Wednesday nights with his father but then went well beyond that contested dispute and ordered visitation of much greater impact. The court had little or no factual basis to determine that the visitation ordered was in Drake’s best interest, and Tracy had no notice that the court would be considering visitation requiring Drake to travel thousands of miles and therefore had no opportunity to present evidence on that issue. Cf. Wiese v. Granata, 110 Nev. 1410, 1413, 887 P.2d 744, 746 (1994) (party threatened with loss of parental rights must be given opportunity to disprove evidence presented, and hearing did not provide such opportunity where other party presented no evidence); Moser v. Moser, 108 Nev. 572, 576-77, 836 P.2d 63, 66 (1992) (litigants in custody proceeding have right to full and fair hearing, and preconditions to change of custody award must be supported by factual evidence).

The district court erred in ordering abatements in Pieter’s child support obligation

The district court ordered a reduction in Pieter’s child support payments of $100 for any month in which either he or Drake had to travel between Reno and Atlanta.
NRS 125B.070(1) sets forth the' formula to determine the amount of support a parent owes a child. NRS 125B.080(6) provides that if a court awards child support which is greater or less than the formula establishes, it must set forth findings of fact providing the amount of support established under the formula and the basis for the deviation from the formula. This court has held that “any such deviation must be based upon the statutory factors provided under NRS 125B.080(9).” Anastassatos v. Anastassatos, 112 Nev. 317, 320, 913 P.2d 652, 654 (1996). The *1021 parties agree that the relevant factor in this case is provided in NRS 125B.080(9)(i): "The cost of transportation of the child to and from visitation if the custodial parent moved with the child from the jurisdiction of the court which ordered the support and the noncustodial parent remained."
Pieter cites Khaldy v. Khaldy, 111 Nev. 374, 377, 892 P.2d 584, 585 (1995), which states: "The district court may use equitable principles in considering a deviation [from the statutory child support formula], as long as the deviation is based on one of the factors enumerated in NRS 125B.080(9)." He argues that here the district court based its deviation on NRS 125B .080(9)(i), which supports a deviation when the custodial parent moves away, and equitably allowed a deviation when the noncustodial parent moves away.
The district court erred in ordering an abatement in Pieter's support obligation for months in which travel expenses for visitation occurred. The Legislature expressly provided only that the cost of transporting a child for visitation is relevant when the custodial parent moves. Equity does not empower the district court to go beyond the enumerated factors and allow a reduction when the noncustodial parent chooses to move. Nor does the statute's exclusion of deviation for moves by noncustodial parents appear arbitrary or inequitable. The Legislature could have concluded that some noncustodial parents would rather pay for travel expenses than provide child support to the other parent and would move in order to reduce their child support obligations, if such a reduction were allowed. On the other hand, it could have concluded that allowing a reduction in child support when the custodial parent moves discourages custodial parents from moving simply to prevent visitation by the other parent.
The district court erred also because it failed to set forth findings of fact providing the amount of support which Pieter would owe under the formula and the basis for its deviation from the formula, as required by NRS 125B .080(6). It failed to set forth these findings not only for the $100 reduction in support payments for travel expenses, but also for the complete abatement of Pieter's support payments during summer visitation. Although Tracy failed to raise the latter issue on appeal, it constitutes plain error which this court may address sua sponte. Bradley v. Romeo, 102 Nev. 103, 105, 716 P.2d 227, 228 (1986).
In Anastassatos, the district court ordered abatement of the father's support obligation during the children's summer visitation with the father. It did so without setting forth findings of fact concerning the basis for the deviation from the formula. The father contended that the abatement during summer visitation was *1022 clearly based upon the fact that the children would spend four weeks with the father and that no other finding was necessary to justify the deviation. Anastassatos, 112 Nev. at 321, 913 P.2d at 654. Citing Barbagallo v. Barbagallo, 105 Nev. 546, 779 P.2d 532 (1989), this court reasoned that simply because "the children spend the four weeks with [the father], it does not necessarily follow that [the mother's] expenses as primary caretaker should correspondingly decrease during that time." Anastassatos, 112 Nev. at 321, 913 P.2d at 654. We therefore concluded that "the terms of the district court's order do not adequately support a deviation from the statutory formula, and the district court's failure to set forth findings of fact as to the basis for the deviation constitutes reversible error." Id.
Therefore, the district court erred in failing to expressly find the amount of child support required under the formula and in failing to set forth factual findings to support the complete abatement of child support during summer visitation.
The district court erred in ordering grandparent visitation without adequate consideration of all relevant factors
Sometime after the hearing, Pieter's counsel requested that Pieter's mother be allowed visitation. Tracy contends that the district court heard no evidence regarding the factors which by statute a court must consider in deciding whether to grant visitation rights to a grandparent. Tracy asks this court to set aside the district court's order granting grandparent visitation and remand the matter for a hearing to consider the proper factors.
NRS 125A.330(1) provides that a court may grant visitation rights to a child's grandparent in a case like this if it finds that such visits
would be in the best interests of the child. In determining whether to grant this right to a petitioner, the court shall consider:
(a) The love, affection and other emotional ties existing between the party seeking visitation and the child.
(b) The capacity and disposition of the party seeking visitation to:
(1) Give the child love, affection and guidance;
(2) Cooperate in providing the child with food, clothing and other material needs during visitation; and
(3) Cooperate in providing the child with health care or alternative care recognized and permitted under the laws of this state in lieu of health care.
*1023 (c) The prior relationship between the child and the party seeking visitation.
(d) The moral fitness of the party seeking visitation.
(e) The mental and physical health of the party seeking visitation.
(f) The reasonable preference of the child, if the child has a preference, and if the child is determined to be of sufficient maturity to express a preference.
(g) The willingness and ability of the party seeking visitation to facilitate and encourage a close and continuing relationship between the child and the parent or parents.
(h) The medical and other needs of the child related to health as affected by the visitation.
(i) Any other factor considered relevant by the court to a particular dispute.
Pieter argues that there is no statutory requirement for a hearing before granting grandparent visitation and that NRS 125A.340(1) does not require consideration of every listed factor since there is no “and” between the factors. He concludes that the testimony of Pieter’s mother provided sufficient evidence of her moral fitness and of the emotional ties and prior relationship between her and Drake to allow the district court to order visitation.
Pieter’s arguments are unpersuasive. The statute states that a court “shall” consider the listed factors. There is no “or” between the factors to allow a disjunctive reading, as Pieter urges. The district court erred in not receiving evidence on and considering all the factors set forth in NRS 125A.340(1) before ordering grandparent visitation.

CONCLUSION

The district court abused its discretion in establishing the visitation schedule without conducting a full and fair hearing on the ramifications of requiring visitation in Atlanta. It erred in reducing Pieter’s child support obligation for travel expenses connected to visitation because the relevant statute does not allow consideration of such expenses when the noncustodial parent moves out of the jurisdiction. The court also erred in abating Pieter’s support obligation during summer visitation without determining the amount of support under the statutory formula and providing a factual basis for deviation from the formula. Finally, the court erred in ordering visits by Drake’s grandmother without receiving evidence on and considering all the relevant factors as required by statute.
We therefore reverse the district court’s judgment and remand *1024 this case for proper determination regarding a visitation schedule given the fact that Pieter now lives in Atlanta, child support during summer visitation, and visitation by the grandmother.
Steffen, C. J., and Young and Shearing, JJ., concur.