195 P.3d 328 (2008)
Michelle RIVERO, Appellant,
v.
Elvis RIVERO, Respondent.
No. 46915.
Supreme Court of Nevada.
October 30, 2008.
*331 Steinberg Law Group and Brian J. Steinberg and Jillian M. Tindall, Las Vegas, for Appellant.
Bruce I. Shapiro, Ltd., and Bruce I. Shapiro, Henderson, for Respondent.
Fahrendorf, Viloria, Oliphant & Oster, LLP, and Raymond E. Oster, Reno, for Amicus Curiae State Bar of Nevada, Family Law Section.
BEFORE THE COURT EN BANC.[1]

OPINION
PER CURIAM:
Appellant Michelle Rivero and respondent Elvis Rivero's divorce decree provided for "joint physical custody" of their minor child, with Ms. Rivero having the child five days each week and Mr. Rivero having the child two days each week. The decree awarded no child support. After the divorce decree was entered, Ms. Rivero brought a motion to modify child custody and support. The district court ordered that the decree would remain in force, with the parties having joint custody of their child and neither party receiving child support. The district court deferred ruling on the motion to modify custody and ordered the parties to mediation to devise a timeshare plan. Ms. Rivero then requested that Judge Miley recuse herself. When Judge Miley refused to recuse herself, Ms. Rivero moved to disqualify Judge Miley. Chief Judge Hardcastle denied Ms. Rivero's motion for disqualification, concluding that she lacked reasonable grounds to bring it. The district court later awarded Mr. Rivero attorney fees, finding that Ms. Rivero's motion for disqualification was frivolous. The parties were unable to reach a timeshare agreement in mediation. Following mediation, after hearing sworn testimony from the parties, the district court modified the custody arrangement from a five-day, two-day split to an equal timeshare. Ms. Rivero appeals.
We are asked to resolve several custody and support issues on appeal. Preliminarily, the parties dispute the definition of joint physical custody. Additionally, Ms. Rivero challenges the district court's determination that the parties had joint physical custody, modification of the custody arrangement, denial of her motion for child support, and Judge Miley's refusal to recuse herself and Chief Judge Hardcastle's denial of Ms. Rivero's motion for disqualification of Judge Miley.
First, addressing the definition of joint physical custody, we adopt a definition that focuses on each parent spending a significant amount of time with the child to ensure that the child has meaningful contact with both parents, without requiring a specific timeshare.
Second, we conclude that the district court abused its discretion by finding that the parties had a joint physical custody arrangement without setting forth specific findings of fact to support its determination.
Third, we also conclude that the district court erred by modifying the custody timeshare arrangement without making specific findings of fact that the modification was in the child's best interest.
Fourth, we address the appropriate formula for determining child support when the parties have joint physical custody with an unequal timeshare. To account for differences in the parents' incomes and the financial costs of caring for the child, we extend the formula set forth in Wright v. Osburn,[2] *332 which accounts for income disparities, but we modify it to factor in the unequal timeshare variable. Here, the district court abused its discretion by denying Ms. Rivero's motion to modify child support without making any factual findings to justify its decision. Child support determinations, even in situations involving joint physical custody, must follow legislative objectives that require each parent to provide a certain level of support for their child in accordance with their respective incomes. When a joint physical custody arrangement exists, child support must be calculated according to Wright if the timeshare is equal, or if the timeshare is unequal, according to the modified Wright formula set forth in this opinion.
Finally, having considered the record and the parties' arguments, we conclude that Judge Miley properly refused to recuse herself, and Chief Judge Hardcastle properly denied Ms. Rivero's motion for disqualification because the motion was frivolous. The record contains no evidence that Judge Miley had personal bias against either of the parties. We further conclude the district court acted within its discretion by awarding attorney fees as a sanction for the frivolous motion.

FACTS AND PROCEDURAL HISTORY
Ms. Rivero filed a complaint for divorce, and the parties reached a settlement regarding all issues except physical custody of their minor child and child support. The district court entered a divorce decree, which ordered that the parties would have joint physical custody of their minor child. Ms. Rivero had physical custody five days each week and Mr. Rivero had physical custody for the remaining two days. Additionally, the divorce decree provided that the parties' child support obligations were offset, and therefore neither party was obligated to pay child support.
Approximately one year after entry of the divorce decree, Ms. Rivero moved for primary physical custody and child support. She alleged that Mr. Rivero did not spend time with the child, that instead his elderly mother took care of the child, and that he did not have suitable living accommodations for the child. Ms. Rivero also argued that she had defacto primary custody because she cared for the child most of the time.
At the custody hearing, the district court heard arguments from both attorneys and questioned Mr. and Ms. Rivero. Both parties presented contradictory testimony regarding how much time Mr. Rivero actually spent with the child. After hearing each party's testimony, the district court concluded that the matter did not warrant an evidentiary hearing. The district court further concluded that the divorce decree did not accurately reflect the parties' actual timeshare agreement. As a result, the court denied Ms. Rivero's motion for child support, found that the parties had joint physical custody, and ordered family mediation in order for the parties to establish a timeshare plan.
Before the hearing regarding the family mediation, Ms. Rivero served a subpoena on Mr. Rivero's employer for his employment records. Mr. Rivero moved to quash the subpoena. At the hearing on the motion, Ms. Rivero argued that Mr. Rivero's employment records were relevant for child support purposes and for determining custody in terms of whether Mr. Rivero's work schedule would realistically allow for an equal timeshare. The district court granted Mr. Rivero's motion to quash the subpoena, explaining that under the divorce decree, each party had joint physical custody, neither party owed child support, and the only pending issue was whether the parties could agree on a timeshare plan.
After the district court granted Mr. Rivero's motion, Ms. Rivero argued that the district court should reopen the child support issue and allow relevant discovery. When the district court refused, Ms. Rivero requested that presiding Judge Miley recuse herself. Judge Miley denied the request. Ms. Rivero then moved to disqualify Judge Miley, alleging that the judge did not seriously consider the facts or the law because she was biased based on the parties' physical appearance. Mr. Rivero opposed the motion and moved for attorney fees. Judge Miley submitted an affidavit wherein she swore that she was unbiased.
*333 After considering Ms. Rivero's motion to disqualify Judge Miley, the supporting affidavits, and Mr. Rivero's opposition, Chief Judge Hardcastle denied the motion. She did not conduct a hearing or allow Ms. Rivero to file a reply. Chief Judge Hardcastle concluded that Ms. Rivero's claims appeared to be based on "prior adverse rulings of the judge" and that "[r]ulings and actions of a judge during the course of official judicial proceedings do not establish legally cognizable grounds for disqualification." Thus, Chief Judge Hardcastle found that Ms. Rivero's motion was without merit.
At a subsequent hearing, the district court granted Mr. Rivero's motion for attorney fees, finding that Ms. Rivero's motion to disqualify was without merit.[3] During the hearing, the district court also addressed the custody timeshare arrangement. The district court again denied Ms. Rivero's request for an evidentiary hearing because it would have resulted in purely self-serving testimony by the parties. Also, the district court found that Ms. Rivero did not have defacto primary physical custody. Therefore, the court determined that an evidentiary hearing was unnecessary because it was not changing primary custody to joint custody, but was modifying a joint physical custody arrangement.
Although the divorce decree provided Ms. Rivero with custody five days each week and Mr. Rivero with custody two days each week, the district court concluded that the parties' actually intended an equal timeshare. The district court noted that it was "just trying to find a middle ground" between what the divorce decree provided and what the parties actually wanted regarding a custody timeshare. Further, the court found that the decree's order for joint physical custody was inconsistent with the timeshare arrangement set forth in the decree because although joint physical custody does not always require an equal timeshare, the decree's five-day, two-day timeshare was too unequal to constitute joint physical custody. In its order, the district court concluded that the parties intended joint physical custody and ordered an equal timeshare.
Ms. Rivero appeals, challenging the district court's order denying her motion for child support, the order denying her motion to disqualify Judge Miley, and the order modifying the custody timeshare and awarding attorney fees.[4]

DISCUSSION

Joint physical custody
On appeal, Ms. Rivero and the Family Law Section assert that this court should clarify the definition of joint physical custody to determine whether it requires a specific timeshare agreement. The Family Law Section urges this court to adopt Missouri's statutory definition of joint physical custody:
"Joint physical custody" means an order awarding each of the parents significant, but not necessarily equal, periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent, continuing and meaningful contact with both parents.[5]
For the reasons set forth below, we adopt the Missouri definition for determining whether a joint physical custody arrangement exists.

Nevada's previous definition of joint physical custody
To date, neither the Nevada Legislature nor this court have defined joint physical custody or specified whether a specific timeshare is required for a joint physical arrangement.[6] *334 Without a precise definition, the district courts, the bar, and litigants are unable to make informed decisions about custody arrangements and the ramifications that certain custody choices and determinations will have on child support obligations.[7]
Although this court has not previously defined joint physical custody, in Barbagallo v. Barbagallo, this court implied that situations involving joint or shared custody may not necessarily involve equal timeshares.[8] The Barbagallo court further noted that even in most joint physical custody situations, "the court will be able to identify a primary and secondary custodian."[9] Thus, Barbagallo apparently recognized two types of joint physical custody: those in which the parents equally share time with the child and those in which the timeshare is unequal.

The Missouri definition
Of the states that define joint physical custody, most utilize a definition similar to Missouri's definition.[10] The Missouri definition comports with this court's precedent. In particular, the Missouri definition does not require an equal timeshare, and this court has similarly indicated that joint physical custody arrangements may include unequal timeshares.[11] Further, the Missouri definition is not contrary to any legislative mandates because the Nevada Legislature declined to specify whether joint physical custody requires a particular timeshare.[12]
The Missouri definition of joint physical custody, which focuses on "significant, but not necessarily equal"[13] periods of time during which the child and each parent are together, provides the district courts and parents with flexibility when creating joint physical custody arrangements. The Missouri definition also helps courts clarify what parents mean when they use the term "joint physical custody" without specifying what timeshare they are implementing.[14] *335 Under the Missouri definition, courts must determine the true nature of the custodial arrangement by considering whether each parent's time with the child is significant, frequent, continuous, and meaningful.[15] Because the Missouri definition provides flexibility and requires courts to clarify parents' joint physical custody arrangements, we conclude that district courts should apply the Missouri definition in determining whether a joint physical custody arrangement exists. We now address the issues on appeal.

Custody modification
Ms. Rivero argues that the district court erred in finding that the parties had joint physical custody of their child. She also contends that the district court erred by construing the term "joint physical custody" in the divorce decree to mean an equal timeshare. We agree.
This court reviews the district court's decisions regarding custody, including visitation schedules, for an abuse of discretion.[16] District courts have broad discretion in child custody matters, but substantial evidence must support the court's factual findings.[17] Substantial evidence "is evidence that a reasonable person may accept as adequate to sustain a judgment."[18] This court reviews questions of law de novo.[19]
The district court's sole concern when determining custody is the best interest of the child.[20] "In determining the best interest of the child, the court shall consider and set forth its specific findings concerning, among other things," the parents' ability to care for the child and the nature of the relationship between the child and each parent.[21] The court may modify or vacate a custody order upon motion by any party, but it must set forth specific findings of fact considering, among other things, "`[t]he physical, developmental and emotional needs of the child,'" and the importance of stability.[22]
Different tests apply when evaluating whether to modify a physical custody arrangement, depending on whether the moving party is seeking to modify a joint custody arrangement or a primary physical custody arrangement.[23] Primary physical custody modifications are appropriate when there is a substantial change in the circumstances affecting the child and the modification serves the child's best interest.[24] In contrast, a joint physical custody modification is appropriate if it is in the child's best interest.[25] Thus, the determination of what constitutes joint physical custody dictates the proper test for custody modification.
In this case, the district court determined that Mr. and Ms. Rivero shared custody on approximately an equal time basis. Based on this finding, the district court determined that it was modifying a joint physical custody arrangement, and therefore Ms. Rivero, as the moving party, had the burden to show that modifying custody was in the child's best interest.[26] The district court, however, did not make findings of fact to support its determination that the custody arrangement was, in fact, joint physical custody.
*336 The district court then modified the custody timeshare without specific findings of fact demonstrating that the modification was in the best interest of the child. After deciding that there was no evidence that it was not in the child's best interest to spend time with Mr. Rivero, the district court ruled that an equal timeshare was the best way to effectuate the parties' intent.
We conclude that the district court's rulings that the custodial arrangement was actually joint physical custody and that an equal timeshare was in the best interest of the child were an abuse of discretion because the rulings lacked specific findings of fact supported by substantial evidence. The district court must evaluate the true nature of the custodial arrangement pursuant to the new definition of joint physical custody described above. According to its specific findings of fact, the district court should then apply the appropriate test for determining whether to modify the custody arrangement.

Child support
Ms. Rivero also argues that the district court erred in denying her motion for child support. We agree. Also, we address the application of the Wright formula to cases of joint physical custody with unequal timeshares.
This court reviews the district court's decisions regarding child support for an abuse of discretion.[27]
A custodial parent may be entitled to child support regardless of the terms of the divorce decree, pursuant to NRS Chapter 125B.[28] When the district court deviates from the statutory amount of child support, it must set forth specific findings of fact stating the basis for the deviation and what the support would have been absent the deviation.[29] Even if the record reveals the district court's reasoning for the deviation, the court must still set forth its findings of fact to support the deviation.[30]
Here, in denying Ms. Rivero child support, the district court relied on the divorce decree. Although Ms. Rivero may have waived her right to child support in the divorce decree,[31] she may still be entitled to receive child support pursuant to NRS Chapter 125B. The district court erred by not making specific findings of fact regarding whether Ms. Rivero was entitled to receive child support under NRS Chapter 125B.
We hold that the district court should determine whether Ms. Rivero is entitled to child support under the statutory formulas, regardless of the language in the divorce decree. If the district court decides to deviate from the statutory child support formulas, then it must set forth specific findings of fact supporting its decision and determine what the child support would have been under the formula. Because the district court failed to take these steps, it abused its discretion in denying Ms. Rivero's motion to modify child support.

The calculation of child support in joint physical custody arrangement with unequal timeshare
The Wright v. Osburn formula determines which parent should receive child support when parties equally share joint physical custody.[32] Under that formula, child support is calculated based on the parents' *337 gross incomes.[33] Each parent is obligated to pay a percentage of their income, according to the number of children, as determined by NRS 125B.070(l)(b). The difference between the two support amounts is calculated, and the higher-income parent is obligated to pay the lower-income parent the difference.[34] The district court may adjust the resulting amount of child support using the statutory factors.[35] The purposes of the Wright formula are to adjust child support to equalize the child's standard of living between parents and to provide a formula for consistent decisions in similar cases.[36]
In unequal timeshare situations, where there is a primary and secondary custodial parent or a custodial and noncustodial parent, the court applies the statutory formula, and makes any necessary deviations.[37] For example, under NRS 125B.080(9)(j), the child support award may be adjusted according to "[t]he amount of time the child spends with each parent."
Nevada law, however, does not give courts sufficient direction for determining how to calculate child support when the arrangement provides for joint physical custody but the parents share unequal time with the child. In such cases, parents may have disparate incomes and also incur different financial burdens while caring for the child. In extending Wright to cases of joint custody with unequal timeshares, we adopt a formula that accounts for any disparity in income as well as time spent caring for the child.

The modified Wright formula
The first step is the same as the Wright formula: the court calculates the amount of child support each parent must pay pursuant to NRS 125B.070, including any adjustments supported by specific findings of fact.[38] Second, the court should determine the percentage of time each parent spends with the child. Third, the court should determine the difference between those amounts of time. Fourth, the court multiplies each parent's calculated child support by the time difference. Fifth, the court subtracts this adjusted child support amount from the parent who has the child more of the time and adds the adjusted amount to the parent who has the child less of the time. Sixth, the court subtracts the smaller number from the larger, and the parent that owes the larger amount of child support pays that amount to the other parent. Seventh, the court applies any applicable statutory caps.[39]
This modified Wright formula accounts for the differences in both income and the financial consequences of caring for the child. The formula works equally well if the parents' incomes are equivalent but the timeshare is unequal. In such a case, the formula adjusts only for the discrepancy in time spent caring for the child. Also, the formula furthers the best interest of the child by equalizing the standard of living between the parents.
The existing statutory formulas, in conjunction with the Wright formula and the modified Wright formula, detailed above, provide flexibility for calculating child support. In joint physical custody arrangements, each parent bears expenses that do not necessarily diminish or increase proportionally with the amount of time they spend with the child,[40] including rent, health care, and vehicle *338 maintenance.[41] Thus, when applying the modified Wright formula, courts should "exercise considerable caution before reducing the formula amounts."[42] Courts can exercise such caution by utilizing the statutory factors in conjunction with the Wright formulas to increase or decrease support as necessary in particular situations.[43]

Motion for recusal and motion for disqualification
On appeal, Ms. Rivero asserts that the district court abused its discretion when Judge Miley refused to recuse herself and when it denied Ms. Rivero's motion to disqualify Judge Miley. Ms. Rivero argues that Judge Miley's behavior demonstrated that she was not "open minded" enough to consider all of the evidence or controlling law. According to Ms. Rivero, the district court abused its discretion in not allowing her to file a reply to Mr. Rivero's opposition to the motion to disqualify and by not permitting her to argue the merits at the hearing. We disagree.
This court gives substantial weight to a judge's decision not to recuse herself and will not overturn such a decision absent a clear abuse of discretion.[44] A judge is presumed to be unbiased, and "the burden is on the party asserting the challenge to establish sufficient factual grounds warranting disqualification."[45] A judge cannot preside over an action or proceeding if he or she is biased or prejudiced against one of the parties to the action.[46] To disqualify a judge based on personal bias, the moving party must allege bias that "`stem[s] from an extrajudicial source and result[s] in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'"[47] "[W]here the challenge fails to allege legally cognizable grounds supporting a reasonable inference of bias or prejudice," a court should summarily dismiss a motion to disqualify a judge.[48]
In this case, Ms. Rivero's allegation that Judge Miley's bias was based on the appearance of the parties is not supported by any evidence in the record and, thus, does not establish a legally cognizable ground for disqualification. Accordingly, we conclude that Judge Miley did not abuse her discretion when she refused to recuse herself and that Chief Judge Hardcastle properly denied Ms. Rivero's motion to disqualify Judge Miley without considering a reply from Ms. Rivero or holding a hearing on the motion.

Attorney fees
Ms. Rivero argues that the district court abused its discretion when it awarded Mr. Rivero attorney fees because Ms. Rivero had a reasonable basis to move for Judge Miley's disqualification. Ms. Rivero contends that NRS 1.230, which prohibits punishment for contempt if a party alleges that a judge should be disqualified, also prohibits an award of attorney fees under NRS 18.010 and sanctions under EDCR 7.60 and NRCP 11. We disagree.
This court reviews the district court's award of attorney fees for an abuse of discretion.[49] NRS 18.010(2)(b), NRCP 11, and EDCR 7.60(b) permit the district court *339 to award attorney fees as a sanction if it concludes that a party brought a frivolous claim.
There are two types of contempt: civil and criminal.[50] Criminal contempt is designed to preserve the authority of the court, and civil contempt enforces the rights of parties.[51] Imprisonment for criminal contempt is a punishment, and imprisonment for civil contempt coerces a party, enforcing a court order.[52] Under NRS 1.230(4), "[a] judge or court shall not punish for contempt any person who proceeds under the provisions of this chapter for a change of judge in a case."
An award of attorney fees for filing a frivolous motion is not similar enough to being held in contempt to warrant prohibiting attorney fee sanctions for bringing a frivolous motion to disqualify a judge. NRS 18.010(2)(b)'s allowing attorney fees as sanctions for bringing a frivolous motion promotes the efficient administration of justice without undue delay and compensates a party for having to defend a frivolous motion. On the other hand, contempt preserves the authority of the court, punishes, enforces parties' rights, and coerces. In this case, attorney fees compensate Mr. Rivero for having to defend a frivolous motion, and the contempt prohibition of NRS 1.230(4) does not apply. Therefore, we conclude that the district court acted within its discretion in awarding Mr. Rivero attorney fees as a sanction for Ms. Rivero's filing a frivolous motion to disqualify.

CONCLUSION
We conclude that the district court abused its discretion when it determined, without making specific findings of fact, that the parties had joint physical custody and when it modified the custody arrangement set forth in the divorce decree. We therefore reverse and remand for further proceedings including a new custody determination pursuant to the definition of joint physical custody adopted in this opinion.
We also conclude that the district court abused its discretion in denying Ms. Rivero's motion to modify child support because it did not set forth specific findings of fact to justify deviating from the statutory child support formulas. We therefore reverse and remand for further proceedings to calculate child support using the Wright or modified Wright formulas explained in this opinion.
We also conclude that Judge Miley properly refused to recuse herself, and the district court properly denied Ms. Rivero's motion for disqualification. Finally, the district court did not abuse its discretion when it awarded Mr. Rivero attorney fees in relation to Ms. Rivero's motion to disqualify Judge Miley. We therefore affirm the district court's orders regarding the recusal, disqualification, and/attorney fees.
NOTES
[1] The Honorable A. William Maupin, Justice, did not participate in the decision of this matter.
[2] 114 Nev. 1367, 970 P.2d 1071 (1998).
[3] Although the district court did not explain in its order the basis for awarding attorney fees, the district court noted during the hearing that Ms. Rivero's motion to disqualify Judge Miley was without merit, and Mr. Rivero's motion for attorney fees was based on NRS 18.010, EDCR 7.60, and NRCP 11, all of which allow an award of attorney fees for defending a frivolous motion.
[4] Given the importance of the definition of joint physical custody, this court invited the Family Law Section of the Nevada State Bar (Family Law Section) to file an amicus curiae brief regarding the issue.
[5] Mo. Ann. Stat. § 452.375(1)(3) (West 2003).
[6] See Potter v. Potter, 121 Nev. 613, 619 n. 16, 119 P.3d 1246, 1250 n. 16 (2005) (declining to address the issue of whether joint physical custody requires a particular timeshare); Barbagallo v. Barbagallo, 105 Nev. 546, 548, 779 P.2d 532, 534 (1989) (noting that, in 1987, when it enacted the child support formula, the Legislature declined to define primary physical custody according to a particular timeshare, for example 40 percent of the time, or 146 days out of the year).
[7] This court has used the following phrases to describe situations where both parents have physical custody: shared custodial arrangements, joint physical custody, equal physical custody, shared physical custody arrangements, and joint and shared custody. Wesley v. Foster, 119 Nev. 110, 113, 65 P.3d 251, 253 (2003) (discussing shared custodial arrangements); Wright, 114 Nev. at 1368, 970 P.2d at 1072 (using the terms joint physical custody, equal physical custody, and shared physical custody arrangements); Barbagallo, 105 Nev. at 547-48, 779 P.2d at 533-34 (utilizing the terms joint or shared custody).
[8] Barbagallo, 105 Nev. at 548, 779 P.2d at 534.
[9] Id. at 549, 779 P.2d at 534.
[10] See Cal. Fam.Code § 3004 (West 2004); Haw. Rev.Stat. § 571-46.1 (2006); Idaho Code Ann. § 32-717B(2) (2006); Mass. Ann. Laws ch. 208 § 31 (LexisNexis 2003); Miss.Code Ann. § 93-5-24(5)(c) (2004); 23 Pa. Cons.Stat. Ann. § 5302 (West 2001); Mamolen v. Mamolen, 346 N.J.Super. 493, 788 A.2d 795, 799 (Ct.App.Div.2002).
[11] See Barbagallo, 105 Nev. at 548-49, 779 P.2d at 534.
[12] See id. at 548, 779 P.2d at 534. Among the states that require a certain timeshare for either joint or primary physical custody, there is not a consensus on the number. See, e.g., Okla. Stat. Ann. tit. 43, § 118(10) (West 2001) (requiring each parent to have physical custody for more than 120 nights each year for shared physical custody); Tenn.Code Ann. § 36-6-402(4) (2005) (defining "`primary residential parent'" as "the parent with whom the child resides more than 50 percent (50%) of the time"); Utah Code Ann. § 78-45-2(13) (2002) (defining joint physical custody as an arrangement where each parent has the child overnight for more than 30 percent of the year, and "both parents contribute to the expenses of the child in addition to paying child support"); W. Va.Code Ann. § 48-1-239 (LexisNexis 2004) (defining basic shared parenting as a custodial arrangement where the noncustodial parent has the child overnight for less than 35 percent of the year, and extended shared parenting as a custodial arrangement where each parent has the child for more than 35 percent of the time, and they both contribute to expenses in addition to child support); Miller v. Miller, 153 N.C.App. 40, 568 S.E.2d 914, 918 (2002) (explaining that joint physical custody requires that each parent have custody for at least one-third of the year).
[13] Mo. Ann. Stat. § 452.375(1)(3) (West 2003).
[14] See Mamolen, 788 A.2d at 798.
[15] Id. ("[A] court of equity is not only freed from but obligated to determine the true nature of the relationship regardless of labels and artificial descriptions.").
[16] Wallace v. Wallace, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996).
[17] Ellis v. Carucci, 123 Nev. 18, ___, 161 P.3d 239, 241-42 (2007).
[18] Id. at ___, 161 P.3d at 242.
[19] Potter v. Potter, 121 Nev. 613, 616, 119 P.3d 1246, 1248 (2005).
[20] NRS 125.480(1); Ellis, 123 Nev. at ___, 161 P.3d at 242.
[21] NRS 125.480(4)(e), (h).
[22] Ellis, 123 Nev. at ___, 161 P.3d at 242 (quoting NRS 125.480(4)(g)).
[23] See NRS 125.510(2); Ellis, 123 Nev. at ___, 161 P.3d at 242.
[24] Ellis, 123 Nev. at ___, 161 P.3d at 242.
[25] NRS 125.510(2); Potter v. Potter, 121 Nev. 613, 618-19, 119 P.3d 1246, 1249-50 (2005).
[26] NRS 125.510(2).
[27] Wallace v. Wallace, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996).
[28] See Atkins v. Atkins, 50 Nev. 333, 336-37, 259 P. 288, 288-89 (1927), superseded by statute on other grounds as stated in Lewis v. Hicks, 108 Nev. 1107, 1111-12, 843 P.2d 828, 831 (1992) (holding that the district court may order child support even where the recipient parent had testified that she did not want child support and had not sought a child support award in her complaint for divorce).
[29] NRS 125B.080(6).
[30] Jackson v. Jackson, 111 Nev. 1551, 1553, 907 P.2d 990, 992 (1995).
[31] See Parkinson v. Parkinson, 106 Nev. 481, 483, 796 P.2d 229, 231 (1990) (stating that in a proceeding to enforce or modify child support, the obligor may raise equitable defenses, such as estoppel and waiver). Mr. Rivero did not explicitly argue waiver, but he asserted that Ms. Rivero agreed to no child support in the divorce decree.
[32] Wright v. Osburn, 114 Nev. 1367, 1368-69, 970 P.2d 1071, 1072 (1998).
[33] Id. at 1368-69, 970 P.2d at 1072.
[34] Id.
[35] NRS 125B.080(9); Wright, 114 Nev. at 1369, 970 P.2d at 1072.
[36] Wright, 114 Nev. at 1368, 970 P.2d at 1072.
[37] NRS 125B.070; NRS 125B.080; Barbagallo v. Barbagallo, 105 Nev. 546, 548-49, 550, 779 P.2d 532, 534-36 (1989). While the Barbagallo court cited to the NRS 125B.080(8) factors, NRS 125B.080 has since been renumbered such that these factors are now located in NRS 125B.080(9). 1989 Nev. Stat., ch. 405, § 14, at 860.
[38] NRS 125B.080(9).
[39] NRS 125B.070(2); Wesley v. Foster, 119 Nev. 110, 113, 65 P.3d 251, 253 (2003) (requiring that any caps be applied after the Wright offset).
[40] See Barbagallo, 105 Nev. at 549, 779 P.2d at 535.
[41] See id. Barbagallo noted the fixed expenses incurred by the primary custodian that may also be incurred by parents with joint physical custody.
[42] Id. at 550, 779 P.2d at 535.
[43] NRS 125B.080(9). Since we remand for further findings regarding child custody and child support, we need not reach the issues regarding discovery of Mr. Rivero's employment records or the evidentiary hearing.
[44] Goldman v. Bryan, 104 Nev. 644, 649, 764 P.2d 1296, 1299 (1988), abrogated on other grounds by Halverson v. Hardcastle, 123 Nev. ___, ___, 163 P.3d 428, 442-43 (2007).
[45] Id. at 649, 764 P.2d at 1299.
[46] NRS 1.230(1).
[47] In re Petition to Recall Dunleavy, 104 Nev. 784, 790, 769 P.2d 1271, 1275 (1988) (quoting United States v. Beneke, 449 F.2d 1259, 1260-61 (8th Cir.1971)).
[48] Id. at 789, 769 P.2d at 1274.
[49] Miller v. Wilfong, 121 Nev. 619, 622, 119 P.3d 727, 729 (2005).
[50] Warner v. District Court, 111 Nev. 1379, 1382, 906 P.2d 707, 709 (1995).
[51] Id. at 1382-83, 906 P.2d at 709.
[52] Id. at 1383, 906 P.2d at 709.