An unpublished order shall not be regarded as precedent and shall not be cited as legal authority. SCR 123.

IN THE SUPREME COURT OF THE STATE OF NEVADA

BEAU DAVIS,
Appellant,
vs.
ANDREA EWALEFO,
Respondent.

No. 63731

**FILED**

JUL 3 1 2014

TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY R. Matin
DEPUTY CLERK

### ORDER OF AFFIRMANCE

This is a fast track child custody appeal from a district court order regarding child custody and support. Eighth Judicial District Court, Family Court Division, Clark County; Kenneth E. Pollock, Judge.

Appellant filed the underlying action to establish child custody, visitation, and support of the parties' minor child. During the proceedings, the parties stipulated that respondent would have primary physical custody of the child but disputed the nature of appellant's visitation. Appellant requested that his visitation with the child take place in Africa, where he lives. After an evidentiary hearing, the district court denied appellant's request for visitation in Africa and ordered him to pay respondent $925 a month in child support as of July 2013. This appeal followed.

On appeal, appellant contends that the district court abused its discretion in denying appellant visitation in Africa and in denying him a longer period of visitation during the child's summer and school breaks. NRS 125.480(1) provides that the sole consideration in determining custody is the child's best interest. It is presumed that a district court properly exercises its discretion in determining a child's best interest, and

SUPREME COURT
OF
NEVADA

(O) 1947A

14-24976

this court will affirm a district court's decision regarding custody absent a clear abuse of discretion. *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996). Thus, this court will affirm a district court's decision if it is supported by substantial evidence. *Williams v. Williams*, 120 Nev. 559, 566, 97 P.3d 1124, 1129 (2004).

At the evidentiary hearing, the district court heard evidence that the child is only seven years old and for the majority of the child's life, appellant has worked overseas, resulting in appellant only seeing the child for a few two-week periods of time each year. The district court also heard evidence regarding the safety of the African countries where appellant proposed that visitation could occur, and the court took judicial notice that the countries were not subject to the Hague Convention. The district court also heard and considered evidence about appellant's schedule and reliability. Although the district court's order does not contain specific factual findings, the record as a whole demonstrates that the district court considered many factors regarding the child's best interest when deciding visitation. *See* NRS 125.480(1). As such, while remanding this matter to the district court for the court to enter factual findings supporting its conclusion is an option available to this court, we decline to do so in this case as it would unnecessarily delay the custody dispute. *See generally Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 242 (2007) (explaining that custodial stability is important in promoting the developmental and emotional needs of a child). And in any case, the parameters of visitation ordered by the district court were similar to the visitation that appellant

had been exercising before the custody proceeding.[1] Thus, we conclude that the district court did not abuse its discretion in denying appellant's request to exercise visitation in Africa and in setting the duration of appellant's visitation periods. *See Wallace*, 112 Nev. at 1019, 922 P.2d at 543.

Appellant also asserts that the district court denied his constitutional right to parent his child by limiting where he could exercise visitation. *See Troxell v. Granville*, 530 U.S. 57, 65 (2000) (providing that a parent has a fundamental interest in the care, custody, and control of his or her child); *In re Parental Rights as to A.G.*, 129 Nev. ___, ___, 295 P.3d 589, 595 (2013) (same). But the district court did not deny appellant his constitutional right to parent his child, as the district court considered the child's best interest in determining visitation. *See Rico v. Rodriguez*, 121 Nev. 695, 704, 120 P.3d 812, 818 (2005) ("In a custody dispute between two fit parents, the fundamental constitutional right to the care and custody of the children is equal" and "the dispute in such cases can be resolved best, if not solely, by applying the best interest of the child standard"). The district court carefully considered evidence of appellant's ongoing involvement with the child, his extended family's involvement, and made significant accommodations for appellant to continue coparenting, and thus, the district court's ruling did not deny appellant of his constitutional right to parent his child.

---

[1]Appellant was awarded five, two-week periods of specific visitation with the child throughout the year in the United States and directed that no more than three of those visitation periods could be exercised within a sixty-day period.

Lastly, appellant argues that the district court abused its discretion in considering appellant's rental income when it calculated appellant's child support obligation. NRS 125B.070 provides that in determining child support obligations, the court must consider the parent's gross monthly income, meaning "the total amount of income received each month *from any source.*" NRS 125B.070(1)(a) (emphasis added). Further, this court has specifically held that for purposes of calculating a noncustodial parent's child support obligation, the parent's gross monthly income is not limited to income from employment. *See Metz v. Metz,* 120 Nev. 786, 793, 101 P.3d 779, 784 (2004). Although appellant argues that the district court miscalculated the monthly amount that he earned from the rental property, he failed to provide any evidence regarding the amount, and thus, the district court did not abuse its discretion in relying on respondent's evidence concerning the amount and in calculating appellant's child support obligation. *See Wallace,* 112 Nev. at 1019, 922 P.2d at 543 (providing that this court reviews child support orders for an abuse of discretion).

For the reasons discussed above, we

ORDER the judgment of the district court AFFIRMED.[2]

_____, J.
Parraguirre

_____, J.
Saitta

---

[2]To the extent that appellant's arguments are not specifically addressed in this order, we conclude that they lack merit.

cc: Hon. Kenneth E. Pollock, District Judge
McFarling Law Group
Andrea Ewalefo
Eighth District Court Clerk

SUPREME COURT
OF
NEVADA

(O) 1947A

PICKERING, J., dissenting:

The district court denied visitation in Africa, where the father was born and currently lives and works. Whether the father should be allowed to have his son visit him in Africa was the main issue in this custody and visitation case. Yet, all the written "decree of custody" says about it is that the father's "request for visitation in Africa is denied." The decree gives no reason for this ruling. And, although the "best interest of the child" is the polestar by which courts are to navigate custody and visitation disputes, *see* NRS 125.480(1), the decree does not mention the best interest of the child, even in passing.

The district court's oral findings do not explain the ban on African visitation either, at least not in terms of parental fitness or the interest of the child. At the end of the evidentiary hearing, the district judge acknowledges that, "[w]e know that the law attempts to maximize the relationship between the child and both parents." Continuing, he finds the child, then almost seven, too young to have a creditable visitation preference; that the parents have "minimal" conflicts; that neither the mother, the father, nor the child has mental or physical health problems; that the child has traveled with his parents—to Africa, in fact—and "benefitted from . . . that travel"; and that there is "no evidence of any abuse or neglect," "no evidence . . . of domestic violence," and "no evidence of a parental abduction" in this case. The only arguably negative finding as to the parties concerns the mother, who the judge said "has demonstrated a tendency towards controlling behavior," though he hastened to add, "that may simply [be] because of the absence of [court] orders and being the primary parent stepping up."

SUPREME COURT
OF
NEVADA

(O) 1947A

The sole reason given for the district court's decision to forbid visitation in Africa until the child reaches majority is this:

> In terms of the visitation in Africa . . . I should note that the world is a dangerous place as we've learned even in the United States terrorism can occur, that *the proposed countries [for visitation in Africa—Rwanda and Uganda] are not Hague signatories nor Hague compliant.*

(Emphasis added.)

On this record, I am not prepared to infer, as my colleagues say the law requires, that the "district court properly exercise[d] its discretion in determining [the] child's best interest." Majority opinion *ante*, at 1-2 (citing *Wallace v. Wallace*, 112 Nev. 1015, 1019, 922 P.2d 541, 543 (1996)) (notably, *Wallace reverses* a district court's custody and visitation determination as "precipitous," *id.* at 1020, 922 P.2d at 544). In my view, it is incumbent on us, as the reviewing court, to evaluate whether "the district court . . . reached its conclusions for [legally] appropriate reasons," *Ellis v. Carucci*, 123 Nev. 145, 149, 161 P.3d 239, 241-42 (2007), and from what appears here, I cannot say that occurred.

The analysis properly begins with the "presumption that fit parents act in the best interests of their children." *Troxel v. Granville*, 530 U.S. 57, 68 (2000)--a presumption that rests on a parent's "fundamental constitutional right to make decisions concerning the rearing of [his or] her own" child. *Id.* at 70. Here, the mother and father disagree on the appropriateness of their child visiting his father in Africa in the summers between the Las Vegas school years. The *legal* question presented is significant: Where, as here, both parents are fit and no threat of abduction

is found, should a parent's visitation rights depend on whether the country in which visitation is proposed is signatory to the Hague Convention?[1]

Courts elsewhere that have considered visitation in non-Hague-signatory countries recognize that reflexive fear of the unknown is not sufficient to overcome a parent's desire to expose his or her child to the world beyond the United States. Absent an established basis to believe the parent would abduct or refuse to return the child, or demonstrated risk of grave harm, courts have

> . . . decline[d] to adopt a bright-line rule prohibiting out-of-country visitation by a parent whose country has not adopted the Hague Convention or executed an extradition treaty with the United States. *Such a rule would unnecessarily penalize a law-abiding parent and could conflict with a child's best interest by depriving the child of an opportunity to share his or her family heritage with a parent. Moreover, it would mistakenly change the focus from the parent to whether his or her native country's laws, policies, religion or values conflict with our own.* Such an inflexible rule would border on

---

[1]In this case, although the mother cited concern with the child's safety which the district court picked up, the court heard no competent, non-hearsay evidence concerning the safety of the countries in which the father proposed to exercise visitation rights (Rwanda and Uganda). Indeed, the mother voluntarily traveled with the child to Kenya in the past, without incident. And, while the mother has spent more time and thus has a closer relationship with the child than the father, this seems inevitable, given the father's place of work and the mother's insistence on Nevada visitation.

> xenophobia, a long word with a long and sinister
> past.

*Abouzahr v. Matera-Abouzahr*, 824 A.2d 268, 281-82 (N.J. Super. Ct. App. Div. 2003) (emphasis added); *see Long v. Ardestani*, 624 N.W.2d 405, 417 (Wis. Ct. App. 2001) (finding no cases that "even hint" at a rule that provides, "as a matter of law that a parent . . . may not take a child to a country that is not a signatory to the Hague Convention if the other parent objects, even if a court finds the parent wishing to take the child intends to return the child and otherwise comply with court orders"). For a general discussion see Lexi Maxwell, Comment, *The Disparity in Treatment of International Custody Disputes in American Courts: A Post-September 11th Analysis*, 17 Pace Int'l L. Rev. 105 (2005).

This case was appealed and submitted on abbreviated, fast-track briefing. While we may be able to review the hearing transcript and come up with reasons the district court perhaps *could* have used to deny the father visitation in Africa, the fact remains that these are not reasons the district court gave for ruling as it did. On the contrary, the reason the district court gave for requiring the father to come half-way around the world to visit his son for two-week stretches of time in Nevada is that the father seeks visitation in a country not signatory to the Hague Convention. I am not prepared to subscribe to a rule that such a restriction is impliedly in the best interest of the child. The findings and record being inadequate to sustain the visitation restriction imposed, I

would reverse or, at minimum, direct full briefing and argument in this troubling case.

I respectfully dissent.

_____, J.
Pickering