ANNAMALAI ASHOKAN, M.D., Petitioner, *v.* THE STATE OF NEVADA, DEPARTMENT OF INSURANCE; THERESA FRONCEK RANKIN, the Commissioner of Insurance, Respondents, and JOE CARTER, Individually and as Special Administrator of THE ESTATE OF SHIRLEY CARTER, Deceased, Real Party in Interest.

No. 23788

July 9, 1993　　　　　　　　　　　　　　856 P.2d 244

*Pico & Mitchell* and *James R. Rosenberger,* Las Vegas, for Petitioner.

*David Goldwater; Peter L. Flangas,* Las Vegas, for Real Party in Interest Joe Carter.

*Rawlings, Olson & Cannon,* Las Vegas, for Amicus Curiae University Medical Center and County Commissioners.

---

[2]The Honorable Cliff Young, Justice, did not participate in the decision of this appeal.

*Vargas & Bartlett* and *Jeffrey J. Whitehead,* Reno, for Amicus Curiae Nevada State Medical Association.

## OPINION

*Per Curiam:*

Petitioner asks this court to issue a writ of prohibition or, in the alternative, mandamus to prohibit the use of a confidential report prepared by a hospital's quality assurance/peer review committee

on the ground that this report enjoys a broad privilege against disclosure or admissibility into evidence. Although the petition suffers from a procedural defect, we nonetheless reach the merits of petitioner's contention. We deny the petition because respondents' use of the report does not implicate the narrow privilege which attaches to quality assurance/peer review committee materials.

On May 12, 1990, Shirley Carter underwent urgent surgery at University Medical Center ("UMC") for a gangrenous cholecystitis and sepsis. Petitioner Annamalai Ashokan ("Ashokan") was the anesthesiologist on the case. At the time of the surgery, Shirley Carter was very ill, having suffered renal failure. She was obese, diabetic, and on dialysis. She was fifty-four years old. During surgery, Shirley Carter suffered cardiac arrest and could not be resuscitated.

UMC's Anesthesia Quality Assurance Sub-Committee ("the sub-committee") prepared a confidential report of the incident which was highly critical of Ashokan. According to the report, Ashokan employed a method of anesthesia which was "relatively, if not absolutely contra-indicated." The report concluded that Shirley Carter's death was caused by poor anesthesia management which was the result of Ashokan's "very poor" judgment.

As the preliminary step in bringing a malpractice action against Ashokan and the surgeon, Joe Carter ("Carter"), Shirley's surviving spouse, filed a complaint before the Medical-Legal Screening Panel of the State of Nevada ("the Panel"). The only documentary evidence which Carter submitted with the complaint was the confidential report of the sub-committee. It is unclear how Carter acquired the confidential report. Neither UMC nor doctors on the sub-committee consented to Carter's use of the report.

The Panel denied a motion to strike the confidential report from the complaint. Ashokan subsequently petitioned the district court to issue a writ of mandamus ordering the Panel to strike the confidential report. Ashokan contended that the confidential report was privileged from disclosure or use as evidence. On October 5, 1992, the district court issued an order denying the petition. On November 23, 1992, Ashokan brought original proceedings in prohibition or mandamus in this court.

This court or the district court may issue a writ of mandamus "to compel the performance of an act which the law especially enjoins as a duty resulting from an office, trust or station" or "to compel the admission of a party to the use and enjoyment of a right . . . ." NRS 34.160. This court may issue a writ of prohibition to arrest "the proceedings of any tribunal, corpora-

tion, board or person exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board or person." NRS 34.320. The two writs are counterparts in that mandamus compels a government body or official to perform a legally mandated act, whereas prohibition compels a government body or official to cease performing acts beyond its legal authority. *Cf.* NRS 34.320. "[T]he decision as to whether a petition [for a writ] will be entertained lies within the discretion of this court." State ex rel. Dep't Transp. v. Thompson, 99 Nev. 358, 360, 662 P.2d 1338, 1339 (1983). However, issuance of writs is generally limited to situations where "there is not a plain, speedy and adequate remedy in the ordinary course of law." NRS 34.170; NRS 34.330.

Carter contends that this court should not entertain the petition because Ashokan could have secured adequate legal redress in the ordinary course of law simply by appealing the district court's denial of a writ. As a general rule, Carter's contention is correct.

This court has generally declined to entertain petitions for review of a district court decision where that decision was appealable. *See* Hickey v. District Court, 105 Nev. 729, 731, 782 P.2d 1336, 1338 (1989) (extraordinary writs available only where no other remedy in the ordinary course of law, "such. as direct appeal," exists); Heilig v. Christensen, 91 Nev. 120, 123, 532 P.2d 267, 269 (1975) (this court refused to consider petition where decision of district court was appealable). The first question, therefore, is whether this court has appellate jurisdiction over the district court's denial of a writ of mandamus.

"No appeal will be allowed unless it is authorized by statute or by rule of court properly promulgated." Bates v. Nevada Savings & Loan Ass'n, 85 Nev. 441, 443, 456 P.2d 450, 451 (1969). NRS 2.090(2) provides that this court "has jurisdiction to review upon appeal . . . an order granting or refusing to grant an injunction or mandamus in the case provided for by law." Furthermore, appeals from an order of the district court either granting or denying a writ are subject to the Nevada Rules of Appellate Procedure. NRS 34.310. NRAP 3A(b)(1) states that "[a]n appeal may be taken . . . [f]rom a final judgment in an action or proceeding commenced in the court in which the judgment is rendered." An order of the district court denying a writ of mandamus is a final judgment within the meaning of NRAP 3A(b)(1). *See* Round Hill Gen. Imp. Dist. v. Newman, 97 Nev. 601, 604, 637 P.2d 534, 536 (1981); *cf.* Dean v. Kimbrough, 88 Nev. 102, 104, 492 P.2d 988, 989 (1972) (in child custody case,

district court's grant or denial of writ of habeas corpus is final judgment and appealable). Therefore, both NRS 2.090(2) and NRAP 3A(b)(1) confer upon this court appellate jurisdiction over the district court's order denying the writ.

It has been suggested that Ashokan was not required to appeal the order of the district court because the district court did not have jurisdiction to entertain the original petition for mandamus. If the district court did not have jurisdiction to entertain the petition for mandamus, proceedings before the district court would be a nullity, and Ashokan would not be required to appeal from a void order. Under this view, Ashokan's only recourse would have been to bring original proceedings for prohibition or mandamus in this court.[1]

In Phelps v. District Court, 106 Nev. 917, 803 P.2d 1101 (1990), this court held that the district court was without jurisdiction to entertain a complaint for declaratory and injunctive relief against the Panel. In *Phelps,* the district court held that the Panel's procedural rules barred the complaining party from submitting the affidavit of a medical expert with its response. *Id.* at 919, 803 P.2d at 1102. Accordingly, the district court enjoined the Panel from considering the affidavit. *Id.* at 920, 803 P.2d at 1102.

This court held that the district court's decision exceeded its jurisdiction, and issued a writ of prohibition voiding the judgment of the district court. *Id.* at 922, 803 P.2d at 1104. This court held that the district court could not enter a declaratory judgment because the action of the Panel did not involve the declaration of any right, status or legal relation of the parties. *Id.* at 920, 803 P.2d at 1103. This court further noted that the legislature had granted the Panel authority to conduct its own affairs, and that the district court could not usurp that authority by imposing its own interpretation of the Panel's procedural rules. *Id.* at 920-21, 803 P.2d at 1103.

The instant case differs from *Phelps* in that Ashokan does not base his claim upon the internal machinations of the Panel, but instead upon a statutory privilege which exists independently of the Panel's proceedings. Where the Panel proceedings infringe upon such a privilege, a party may resort to the district court for protection of that privilege. Therefore, we conclude that the district court did have jurisdiction to hear Ashokan's claim that the sub-committee report was privileged, and the proper proce-

---

[1]Assuming that the district court did not have jurisdiction to entertain the writ, an appeal to this court would have been fruitless because this court would merely have acknowledged that a writ could not issue from the district court.

dure for bringing the issue before this court was via appeal of the district court order denying the writ.

Nonetheless, despite the availability of an adequate legal remedy, this court has decided to exercise its constitutional prerogative to entertain the writ. NEV. CONST. art. 6, § 4; Jeep Corp. v. District Court, 98 Nev. 440, 443, 652 P.2d 1183, 1185 (1982) (where circumstances reveal urgency or strong necessity, extraordinary relief may be granted); State of Nevada v. McCullough, 3 Nev. 202, 214-15 (1867). Although loath to deviate from our general practice, we do so for the following reasons: First, this court has not yet had the opportunity to interpret NRS 49.265(1), the statute conferring a limited privilege upon medical review committee reports. The facts of the instant case provide a unique opportunity to define the precise parameters of the privilege. Second, in view of our interpretation of the privilege, we conclude that hospitals should be made aware as soon as possible of the privilege's limited scope so that they can take appropriate measures to safeguard their files against misappropriation by unauthorized persons. Finally, because we deny the petition, respondents do not suffer any prejudice from our decision to address the merits of the petition, nor does Ashokan gain by his failure to follow the requisite procedure.

Ashokan contends that NRS 49.265(1) confers upon him a privilege to prevent the disclosure or use as evidence of the subcommittee report. We disagree.

The Panel is bound by statutorily enacted privileges to the same extent as the courts. NRS 47.020; *see* 3 Kenneth C. Davis *Administrative Law Treatise* § 16.10 (2d ed. 1980) ("Any privilege that is based on substantive policy is obviously as appropriate for an agency proceeding as for a court proceeding."). NRS 49.265(1) states:

> (a) The proceedings and records of:
>
> (1) Organized committees of hospitals, and organized committees of organizations that provide emergency medical services pursuant to the provisions of chapter 450B of NRS, having the responsibility of evaluation and improvement of the quality of care rendered by those hospitals or organizations; and
>
> (2) Review committees of medical or dental societies, are not subject to discovery proceedings.
>
> (b) No person who attends a meeting of any such committee may be required to testify concerning the proceedings at the meeting.

Although NRS 49.265(1) does not use the term "privilege," the sub-committee's comment accompanying the statute indicates that the legislature did view this statute as creating a privilege.

Privileges should be construed narrowly. United States v. Nixon, 418 U.S. 683, 710 (1974) ("Whatever their origins, these exceptions to the demand for every man's evidence [i.e., privileges] are not lightly created nor expansively construed, for they are in derogation of the search for truth."); West Covina Hosp. v. Superior Court, 718 P.2d 119, 121 (Cal. 1986). On its face, the scope of NRS 49.265(1) is extremely limited. It provides that proceedings and records of hospital review committees "are not subject to discovery proceedings," and that one who attends a committee meeting cannot be "required" to testify about the proceedings. By excluding committee materials from "discovery proceedings," the legislature clearly intended to put these materials beyond the reach of compulsory discovery devices. However, NRS 49.265(1) is silent as to materials acquired without recourse to discovery proceedings.

The California Supreme Court addressed a similar issue in interpreting Cal. Evid. Code Section 1157, which is almost identical to NRS 49.265. In West Covina Hosp. v. Superior Court, 718 P.2d at 120, the plaintiff in a medical malpractice case proposed to call as a witness a physician who served on a medical staff committee which evaluated the allegedly negligent surgeon. The trial court ruled that the physician could testify if the testimony was voluntary. Id. The California Supreme Court affirmed.

The California Supreme Court noted that the statute stated merely that a committee member was not "required" to testify, and that in other statutes "the Legislature has shown that it is well aware of the distinctions relating to discovery, privileges, and admissibility of evidence." Id. at 120-21. Because the statute was clear, the court stated that it would "decline to follow it only when it would inevitably frustrate the manifest purposes of the legislation as a whole or would lead to absurd results." Id. at 121-22.

The California Supreme Court characterized section 1157 as implementing the legislature's purpose of improving hospital care by encouraging doctors to participate on medical review committees. Id. Section 1157's narrowly tailored privilege encourages doctors to join review committees by eliminating the burdens of compulsory discovery and involuntary testimony which might otherwise result from participation on a committee. Id.

The court also noted that the legislature intended section 1157 to promote frank discussion among committee members, but that the legislature had to balance this interest against "the social cost" of confidentiality:

In a damage suit for in-hospital malpractice against doctor or hospital or both, unavailability of recorded evidence of incompetence might seriously jeopardize or even prevent the plaintiff's recovery. Section 1157 represents a legislative choice between competing public concerns. It embraces the goal of medical staff candor at the cost of impairing plaintiffs' access to evidence.

*Id.* at 123. The court acknowledged that extending the scope of section 1157 to exclude voluntary testimony would further promote candor among physicians, but that such an extension was not essential to effectuating the legislature's purpose. *Id.* at 124. "[I]t is for the Legislature to determine how far to go in promoting its various goals . . . . [T]here is no justification for courts to strike a different balance." *Id.*

The California Supreme Court's analysis in *West Covina* applies equally well to NRS 49.275. In NRS chapter 49, the Nevada legislature has demonstrated its ability to grant broad privileges. Under the legislature's typical formulation, the holder of a privilege has the right "to refuse to disclose, and to prevent any other person from disclosing, confidential communications . . . ." *Cf.* NRS 49.095 (attorney-client); NRS 49.185 (accountant-client); NRS 49.225 (doctor-patient); NRS 49.247 (marriage/family therapist-client); NRS 49.252 (social worker-client).

The legislature grouped NRS 49.265 with other privileges whose scope differs from the usual formula. *See, e.g.,* NRS 49.255 (clergyman "shall not . . . be examined as a witness as to any confession" without consent); NRS 49.275 (reporter "may not be required to disclose" information or sources). This group of privileges, which the NRS categorizes as "OTHER OCCUPATIONAL PRIVILEGES," evidences the legislature's effort to tailor certain privileges to specific parameters. In enacting NRS 49.265(1), the legislature obviously understood that it was creating a privilege with a much narrower scope than that of other privileges.

Amicus Curiae[2] stress the need for extensive confidentiality of committee proceedings by referring to statutes from other jurisdictions which expressly bar the admission of committee materials as evidence. *See, e.g.,* CONN. GEN. STAT. § 19a-17b(d) (1993); FLA. STAT. ANN. § 766.101(5) (West Supp. 1993); IDAHO CODE § 39-1392b (1985); MINN. STAT. ANN. § 145.64 (West Supp. 1993); MONT. CODE ANN. §§ 50-16-203 and 50-16-205 (1991); OHIO REV. CODE ANN. § 2305.251 (Anderson

---

[2]This court granted leave to the Nevada State Medical Association and UMC to file briefs as Amicus Curiae.

1991); OR. REV. STAT. § 41.675 (1991). However, these statutes undermine their argument. These statutes indicate that legislatures know how to enact a broad privilege for committee records when that is their purpose. The legislatures of other jurisdictions obviously struck a balance between frank committee discussion and concern for malpractice plaintiffs which differs from the balance which the Nevada legislature, and the California legislature, deemed appropriate.

Given the competing interests behind the privilege, the legislature's demonstrated ability to draft privilege statutes with very precise parameters, and the general interpretive principle that privileges should be construed narrowly, we conclude that petitioner's speculations as to legislative intent are insufficient to justify expansion of the privilege statute beyond the plain meaning of its words.

Ashokan cannot prevent the admission of the sub-committee report unless that report is privileged. NRS 49.015(1)(d). NRS 49.265(1) put the sub-committee report beyond the reach of "discovery proceedings." However, Carter acquired the report without recourse to discovery proceedings. Nothing in NRS 49.265(1) bars the use of a report which was acquired by other means.

Accordingly, the petition for a writ of prohibition or, in the alternative, a writ of mandamus is denied.