CITY OF RENO, Appellant, *v.* RENO
GAZETTE-JOURNAL, Respondent.

No. 40393

February 28, 2003                           63 P.3d 1147

---

[14]*See* NRCP 6(a).

[15]NRS 34.160; *Round Hill Gen. Imp. Dist. v. Newman,* 97 Nev. 601, 637 P.2d 534 (1981); *Smith v. District Court,* 113 Nev. 1343, 950 P.2d 280 (1997).

*Patricia A. Lynch,* City Attorney, and *Jonathan D. Shipman,* Deputy City Attorney, Reno, for Appellant.

*Burton, Bartlett & Glogovac* and *Phillip W. Bartlett* and *Rebecca A. Rivenbark,* Reno, for Respondent.

*McDonald Carano Wilson LLP* and *Michael A.T. Pagni* and *Sylvia L. Harrison,* Reno, for Amicus Curiae Truckee Meadows Water Authority.

Before the Court EN BANC.

## OPINION

*Per Curiam:*

In this appeal, we are asked to consider whether documents related to relocation and acquisition of property for the Reno Transportation Rail Access Corridor Project (ReTRAC) are public information, requiring disclosure under the Nevada Public Records Act. We conclude that these records have been declared confidential by law. Therefore, they are exempt from disclosure under the Nevada Public Records Act.

*FACTS*

In December 1998, the City of Reno (City) entered into an agreement with the Union Pacific Railroad to build ReTRAC. The purpose of ReTRAC is to eliminate eleven existing at-grade rail crossings in downtown Reno by building a trench for trains to travel through the City. ReTRAC is the largest public works project the City has ever undertaken, with an estimated budget of $200,000,000. The budget for ReTRAC has been the subject of immense controversy and several lawsuits.

To complete this project, the City must acquire certain real property, including thirty-two parcels along the railroad right-of-way. Additionally, approximately fifty-two businesses may have to be relocated to accommodate the project. Because ReTRAC is classified as a federal highway project, the City must comply with the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970 (the Act).[1] The Cooperative (Stewardship) Agreement between the City and the Nevada Department of Transportation (NDOT), the Federal Highway Administration's agent for ReTRAC, specifically states that the City must provide written certification to NDOT that all new right-of-way was acquired in accordance with the Act.

On July 30, 2002, Anjeanette Damon, a reporter employed by the Reno Gazette-Journal (RGJ), sent a letter to Brent Boyer, Property Program Manager of the City, requesting access to appraisal and other documents related to ReTRAC. Specifically, Damon requested access to: (1) the appraisal values for each of the thirty-two parcels of property to be acquired by the City for ReTRAC, including the monetary amount offered by the City for each title acquisition, acquisition of buildings on the railroad right-of-way, and acquisition of temporary and permanent easements; (2) the monetary amount to be offered to each of the fifty-two businesses that may have to be relocated because of the project; (3) a specific breakdown of any other costs included in the project's $17,760,000 property-acquisition budget; and (4) the name and physical address of each property owner, leaseholder and tenant who would receive payment from the City with the list of appraisal values and relocation payments.

In a letter dated August 1, 2002, the City denied Damon's request on the grounds that state and federal law classify all records maintained by the City relating to ReTRAC property acquisition and relocation as confidential as a matter of law regarding their use as public information.

The RGJ then petitioned the district court for a writ of mandamus. The RGJ argued that the acquisition and relocation records are public records and are required to be open for inspection under

---

[1] 42 U.S.C. §§ 4601-4655 (1995).

the Nevada Public Records Act. As a consequence, the district court issued a writ, directing the City to provide copies of such documents or show cause why such documents should not be provided. The City filed an opposition to the RGJ's petition. After a hearing, the district court issued a permanent writ of mandamus directing the City to provide copies of the requested documents to the RGJ.

The City filed a notice of appeal with this court and a motion for stay pending appeal with the district court. Because the district court denied the motion for a stay, the City filed an emergency motion to stay the writ with this court, which we granted.

## DISCUSSION

*Standard of review*

"A district court's decision to grant or deny a writ petition is reviewed by this court under an abuse of discretion standard."[2] However, questions of statutory construction, including the meaning and scope of a statute, are questions of law, which this court reviews de novo.[3]

*Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970*

The United States Congress enacted the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970[4] to establish "a uniform policy for the fair and equitable treatment of persons displaced as a direct result of programs or projects undertaken by a Federal agency or with Federal financial assistance."[5] The Act requires a state agency to comply with the Act's policies whenever the agency seeks federal financial assistance for "any program or project which will result in the acquisition of real property on and after January 2, 1971."[6]

*NRS 342.105*

In 1989, the Nevada Legislature enacted NRS 342.105. This statute provides, in relevant part:

---

[2]*DR Partners v. Bd. of County Comm'rs,* 116 Nev. 616, 621, 6 P.3d 465, 468 (2000) (citing *County of Clark v. Doumani,* 114 Nev. 46, 53, 952 P.2d 13, 17 (1998)).

[3]*State, Bus. & Indus. v. Granite Constr.,* 118 Nev. 83, 86, 40 P.3d 423, 425 (2002) (citing *SIIS v. United Exposition Services Co.,* 109 Nev. 28, 30, 846 P.2d 294, 295 (1993)).

[4]42 U.S.C. §§ 4601-4655 (1995).

[5]42 U.S.C. § 4621(b) (1995).

[6]42 U.S.C. § 4655(a) (1995).

Any department, agency, instrumentality or political subdivision of this state, or any other public or private entity, which is subject to the provisions of the federal Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, 42 U.S.C. §§ 4601-4655, and the regulations adopted pursuant thereto, and which undertakes any project that results in the acquisition of real property or in a person being displaced from his home, business or farm, shall . . . follow such procedures and practices as are necessary to comply with those federal requirements.[7]

The Nevada statute references the federal Act and the regulations adopted pursuant to the Act. Therefore, the federal Act and the regulations are incorporated into Nevada's statute and remain so, as long as the federal Act is in force.[8] Furthermore, by making reference to the Act, "should the United States Congress again, in the future, amend the Uniform Relocation Act, [Nevada] would automatically be in compliance without having to readjust the state statutes."[9]

The City is a political subdivision of the State. Therefore, the City is subject to NRS 342.105. The City is currently in the process of acquiring real property for the ReTRAC project. ReTRAC is being financed, in part, by federal funds. Thus, the City must comply with the Act and its regulations that were adopted by reference in NRS 342.105. Furthermore, the City is also under a contractual obligation to comply with the requirements of the Act and NRS 342.105 because compliance with the Act was an express term of the Cooperative (Stewardship) Agreement entered into by the City.

*Nevada Public Records Act, NRS 239.010*

In 1911, the Nevada Legislature enacted the Nevada Public Records Act, NRS 239.010. The purpose of this statute is "to ensure the accountability of the government to the public by facilitating public access to vital information about governmental activities."[10] The statute provides, in relevant part:

All public books and public records of a governmental entity, the contents of which are *not otherwise declared by law to be confidential,* must be open at all times during office hours to

---

[7]NRS 342.105(1).

[8]*See Walsh ex rel. v. Buckingham,* 58 Nev. 342, 349, 80 P.2d 910, 912 (1938).

[9]Hearing on A.B. 623 Before the Assembly Governmental Affairs Comm., 65th Leg., at 3 (Nev., May 5, 1989) (statement by Mr. Conway Barlow, Nevada Division of the Federal Highway Administration).

[10]*DR Partners,* 116 Nev. at 621, 6 P.3d at 468.

inspection by any person, and may be fully copied or an abstract or memorandum may be prepared from those public books and public records.[11]

This statute plainly provides that public records must be available for inspection, unless the records are declared by law to be confidential.[12] Thus, the relevant inquiry is whether these records are confidential.[13] If the records in question have been declared by law to be confidential, they are exempt from the Nevada Public Records Act.

### 49 C.F.R. § 24.9(b)

The federal Act provides that "[t]he head of the lead agency shall . . . develop, publish, and issue . . . such regulations as may be necessary to carry out this chapter."[14] The Act designates the Department of Transportation as the "lead agency."[15] One of the regulations issued pursuant to the Act is 49 C.F.R. § 24.9(b), which states that "[r]ecords maintained by an Agency in accordance with this part are confidential regarding their use as public information, unless applicable law provides otherwise."

We interpret a regulation according to its plain meaning.[16] This regulation plainly makes records involved in the acquisition real property for federally funded programs confidential, and not public information, unless there is a law providing that they are not confidential. The RGJ argues that the Nevada Public Records Act is the applicable law that makes these records public. We disagree.

We have previously stated that "it is an accepted rule of statutory construction that a provision which specifically applies to a given situation will take precedence over one that applies only generally."[17] Here, the federal regulation specifically provides that these records are "confidential regarding their use as public in-

---

[11]NRS 239.010(1) (emphasis added).

[12]See Nevada Power Co. v. Haggerty, 115 Nev. 353, 366, 989 P.2d 870, 878 (1999) ("'When the language of a statute is plain and unambiguous, a court should give that language its ordinary meaning and not go beyond it.'" (quoting City Council of Reno v. Reno Newspapers, 105 Nev. 886, 891, 784 P.2d 974, 977 (1989))).

[13]The record reflects that the parties did not address whether any of the requested documents meet the definition for public book or record.

[14]42 U.S.C. § 4633(a)(1) (1995).

[15]42 U.S.C. § 4601(12) (1995).

[16]See State Envtl. Comm'n v. John Lawrence Nev., 108 Nev. 431, 435, 834 P.2d 408, 411 (1992).

[17]Sierra Life Ins. Co. v. Rottman, 95 Nev. 654, 656, 601 P.2d 56, 57-58 (1979) (citing W. R. Co. v. City of Reno, 63 Nev. 330, 172 P.2d 158 (1946)).

formation, unless applicable law provides otherwise."[18] The Nevada Public Records Act merely provides that public records that are not "declared by law to be confidential," must be open for inspection.[19] It does not declare that records regarding acquisition of property are public. Acquisition records have been declared confidential under 49 C.F.R. § 24.9(b), which was adopted by statute into Nevada law. Therefore, these records fit within the exemption provided in the Nevada Public Records Act. The Nevada Public Records Act is not "applicable law" changing the confidential nature of these records.

## CONCLUSION

In NRS 342.105, the Nevada Legislature adopted, by reference, the federal Act and its regulations. Under 49 C.F.R. § 24.9(b), the records in question are confidential. They are therefore exempt from the Nevada Public Records Act.[20] Thus, we reverse the district court's order and dissolve the writ of mandamus.[21]

GIBBONS, J., dissenting:

I would affirm the decision of the district court.

"[I]nformed public opinion is the most potent of all restraints upon misgovernment."[1] The Nevada Public Records Act, NRS 239.010, provides citizens with an unqualified right to access public records unless the records are declared confidential by law. We have held that any exception to this statute "should be interpreted and applied narrowly."[2]

Since the Reno Transportation Rail Access Corridor Project (ReTRAC) is classified as a highway project, the City of Reno (City) is required to adhere to the Uniform Relocation Assistance and Real Property Acquisition Policies Act (Act). Under 49 C.F.R. § 24.9(b), records maintained in accordance with the Act "are confidential regarding their use as public information, *unless applicable law provides otherwise.*" (Emphasis added.) Therefore, a state such as Nevada may make an independent determination

---

[18]49 C.F.R. § 24.9(b) (2002).

[19]*See* NRS 239.010(1).

[20]*See* NRS 239.010.

[21]THE HONORABLE A. WILLIAM MAUPIN, Justice, did not participate in the decision of this matter.

[1]*Grosjean v. American Press Co.,* 297 U.S. 233, 250 (1936).

[2]*DR Partners v. Bd. of County Comm'rs,* 116 Nev. 616, 621, 6 P.3d 465, 468 (2000) (citing *Ashokan v. State, Dep't of Ins.,* 109 Nev. 662, 668, 856 P.2d 244, 247 (1993) (citing *United States v. Nixon,* 418 U.S. 683, 710 (1974) ("Whatever their origins, these exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth."))).

of whether public records relating to the Act should be deemed confidential.

The Nevada Public Records Act is the applicable law governing the ''confidentiality'' of ReTRAC documents. Neither party has disputed that the pertinent documents are public records. The purpose of NRS 239.010 is ''to ensure the accountability of the government to the public by facilitating public access to vital information about governmental activities.''[3] This coincides with Nevada's general policy of favoring open government.[4] In applying Nevada law and considering the intent of the legislature in creating NRS 239.010, public records relating to property acquisition for ReTRAC should not be ''confidential.'' Rather, these documents should be subject to review by the citizens most affected by its impact.

ReTRAC is the largest and most costly public works project in the history of the City with a cost of $282 million. The project's acquisition budget alone is projected at nearly $18 million. The project includes the acquisition of thirty-two parcels of land and relocation of approximately fifty-two businesses. The legislature's intent of holding local agencies accountable through public scrutiny necessitates that public documents pertaining to property acquisition under ReTRAC be made available to the public. The City should be precluded from hiding behind a veil of secrecy in a project of such magnitude.

Further, ''the suppression or abridgement of the publicity afforded by a free press [to issues of public concern] cannot be regarded otherwise than with grave concern.''[5] Freedom of the press must remain inviolate.

---

[3]*Id.*

[4]*Id.* at 622, 6 P.3d at 468 (citing *Donrey of Nevada v. Bradshaw,* 106 Nev. 630, 635-36, 798 P.2d 144, 147-48 (1990)).

