134 Nev., Advance Opinion 16

# IN THE SUPREME COURT OF THE STATE OF NEVADA

| | |
|---|---|
| LESLIE LYNN MILLER, Appellant, vs. BRETT ROBERT MILLER, Respondent. | No. 69353 |

**FILED**

MAR 15 2018

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY _____
CHIEF DEPUTY CLERK

Appeal from a district court divorce decree and determination of child support. Eighth Judicial District Court, Family Court Division, Clark County; Charles J. Hoskin, Judge.

*Reversed and remanded with instructions.*

Pecos Law Group and Jack W. Fleeman, Henderson,
for Appellant.

Christopher P. Burke, Las Vegas,
for Respondent.

Fine Carman Price and Michael P. Carman, Henderson,
for Amicus Curiae State Bar of Nevada, Family Law Section.

BEFORE THE COURT EN BANC.

## OPINION

By the Court, HARDESTY, J.:

In this opinion, we address a matter of first impression: how to interpret and apply Nevada's child support statutes where both parents share joint physical custody of one child but one parent has primary

18-10186

physical custody of the other child. We provide guidance on how to calculate child support in this type of custody arrangement. We further stress the importance of the district court's duty to make sufficient findings of fact when deviating from the statutory formula for child support calculations.

Appellant Leslie Miller and respondent Brett Miller are the parents of two minor children. They divorced in 2015 and, through family mediation, reached an agreement on almost all aspects of the divorce, including custody of the children. They agreed to share joint physical custody of one of their children, but Leslie has primary physical custody of the other child because that child lives with Leslie and stays with Brett every other weekend. The parents were unable, however, to reach an agreement on child support. The district court determined that Brett was to pay Leslie $345 in monthly child support. Leslie filed a motion for reconsideration, to amend the judgment, and for findings of fact and conclusions of law on the child support calculation, arguing that there was no controlling Nevada authority governing a split custody situation like theirs, the district court's $345 award fell below the statutory guidelines, and the award was unreasonable given the parties' incomes and circumstances. Additionally, at the hearing on Leslie's motion, Leslie requested the district court to explain how it arrived at the amount of $345, but the district court provided no calculations.

The district court denied Leslie's motion, finding that its $345 award was in the children's best interests. The court explained that it had "run the numbers using the statutory percentages of 18% for one child and 25% for two children and given the comparative incomes, the deviation factors permitted under NRS 125B.080(9), and all circumstances, the $345

per month in child support is the appropriate figure." Leslie brings this appeal challenging the district court's child support award.

## DISCUSSION

On appeal, Leslie argues that the district court abused its discretion by not providing specific findings of fact to explain the deviation from the amount of child support owed under the statutory guideline. Leslie further argues that the amount of child support is unreasonable under the child support guidelines and based on the parties' custody arrangement and respective incomes. Brett argues that there is no statute that provides a guideline for determining child support in a custody situation like the Millers', so the district court could not have abused its discretion. The parties, the district court, and amicus curiae, the State Bar of Nevada Family Law Section (FLS), have asked this court to determine the appropriate formula for the calculation of child support in this type of situation. The parties and FLS provide formulas based on their varying interpretations of NRS 125B.070, the statute that provides the baseline percentages of income for determining child support.

We have not previously considered the application of NRS 125B.070 to a split custody scenario where both parents share joint physical custody of one child and one parent has primary physical custody of another child. However, we are not without statutory guidance and jurisprudence. Therefore, in this opinion, we analyze Nevada's statutory child support framework and caselaw. Next, we consider the district court's determination of the child support award in this case and the parties' and FLS's interpretations of NRS 125B.070. Finally, we apply the appropriate formula to the Millers' custody arrangement to clarify the steps district courts must take when determining the appropriate child support amount.

*Nevada's child support framework*

"[Q]uestions of statutory construction, including the meaning and scope of a statute, are questions of law, which [we] review[ ] de novo." *City of Reno v. Reno Gazette-Journal*, 119 Nev. 55, 58, 63 P.3d 1147, 1148 (2003). NRS 125B.020(1) states that "[t]he parents of a child . . . have a duty to provide the child necessary maintenance, health care, education and support."[1] This duty is defined in NRS 125B.070, which is the starting point for calculating child support. In NRS 125B.070, the Legislature set forth a formula for determining the "obligation for support," which is a flat rate percentage of a parent's gross monthly income that each parent owes for the support of their children based on the number of children they have.

---

[1]We acknowledge that the Nevada Legislature unanimously adopted Assembly Bill 278 in 2017, which created the Committee to Review Child Support Guidelines to examine Nevada's existing child support guidelines and provide recommendations and revisions that "ensure that the application of such guidelines results in appropriate awards of child support." 2017 Nev. Stat., ch. 371, Legislative Counsel's Digest, at 2280; A.B. 278, 79th Leg. (Nev. 2017). A.B. 278 "repeals the provisions of existing law establishing the general formula for calculating child support." 2017 Nev. Stat., ch. 371, Legislative Counsel's Digest, at 2280. The current child support statutes that establish the formula for calculating child support include NRS 125B.070 and NRS 125B.080, which we address in depth in this opinion. Pursuant to A.B. 278, "the repeal of such provisions becomes effective on the effective date of the regulations adopted by the Administrator [of the Division of Welfare and Supportive Services of the Department of Health and Human Services] establishing child support guidelines." *Id.* Any discussion in this opinion related to the child support statutes is based on the statutes in effect at the commencement of this litigation in 2015, and we recognize that the statutory framework may change based on the new child support guidelines.

NRS 125B.070(1)(b) explains the "obligation for support" as follows:

> "Obligation for support" means the sum certain dollar amount determined according to the following schedule:
>
> > (1) For one child, 18 percent;
> >
> > (2) For two children, 25 percent;
> >
> > (3) For three children, 29 percent;
> >
> > (4) For four children, 31 percent; and
> >
> > (5) For each additional child, an additional 2 percent,
>
> of a parent's gross monthly income, but not more than the presumptive maximum amount per month per child set forth for the parent in subsection 2 for an obligation for support determined pursuant to subparagraphs (1) to (4), inclusive, unless the court sets forth findings of fact as to the basis for a different amount pursuant to subsection 6 of NRS 125B.080.

Accordingly, the plain language of NRS 125B.070 demonstrates that the "obligation of support" for two children is 25 percent of each parent's income. The percentage of income is determined without regard to the custody arrangements the parents have with their children. *See* NRS 125B.070; *see also Wright v. Osburn*, 114 Nev. 1367, 1368-69, 970 P.2d 1071, 1072 (1998). In *Wright*, we held that NRS 125B.020 and NRS 125B.070, read together, require each parent to provide a minimum level of child support depending on the number of children, and "[t]his requirement is independent of the custody arrangements." 114 Nev. at 1368, 907 P.2d at 1072. Our holding in *Wright* made clear that each parent's obligation of support is calculated first, and then the physical custody arrangement governs how much support a parent owes to the other parent. *Id.* at 1368-69, 907 P.2d at 1072.



In *Barbagallo v. Barbagallo*, we acknowledged that the definition of "obligation of support" contained in NRS 125B.070 was "designed to relate to the traditional and once quite typical post-divorce situation in which one parent (usually the mother) is the 'custodial parent' and the other parent (usually the father) is the 'noncustodial parent.'" 105 Nev. 546, 548, 779 P.2d 532, 534 (1989), *overruled on other grounds by Wright*, 114 Nev. at 1368, 970 P.2d at 1072. However, upon review of the legislative history for NRS 125B.070, the originally proposed legislation included a formula for joint physical custody arrangements and examples of calculations for determining child support where the parents have two children but each parent does not have the children for exactly 50 percent of the time.[2] Hearing on A.B. 424 Before the Assembly Judiciary Comm., Exhibit E, 64th Leg. (Nev., April 13, 1987). While those calculations were removed from the final bill, we conclude, as the court in *Barbagallo* did, that the definition of "obligation for support" is broad enough to apply to custody arrangements other than primary physical custody. 105 Nev. at 548-49, 779 P.2d 532 at 534.

We have previously applied the formula set forth in NRS 125B.070 to two types of custody arrangements. The first type is where one parent has primary physical custody of a child. In such situations, the application of NRS 125B.070 is straightforward: the noncustodial parent must pay the custodial parent the appropriate percentage of his or her gross monthly income. *Bluestein v. Bluestein*, 131 Nev. 106, 109 n.1, 345 P.3d

---

[2]Each of the calculations included in the legislative history begins with calculating the parents' obligation for support under NRS 125B.070, regardless of the custody arrangement of the parents. *See* Hearing on A.B. 424 Before the Assembly Judiciary Comm., Exhibit E, 64th Leg. (Nev., April 13, 1987).

1044, 1046 n.1 (2015). The second type of custody arrangement is where the parents share joint physical custody of a child. *Wright*, 114 Nev. at 1368-69, 970 P.2d at 1072. In a joint physical custody arrangement, "the higher-income parent is obligated to pay the lower-income parent the difference between the parents' statutorily calculated child support amounts." *Bluestein*, 131 Nev. at 109 n.1, 345 P.3d at 1046 n.1.[3]

Under both of these custody arrangements, the next step in the child support calculation after determining each parent's obligation for support is to ensure the obligation for support does not exceed the "presumptive maximum amount per month per child" set forth in NRS 125B.070(2). *Wesley v. Foster*, 119 Nev. 110, 113, 65 P.3d 251, 253 (2003) ("The *Wright* offset should take place before, not after, application of the cap.").

Finally, upon completion of each of those steps, the district court has discretion under NRS 125B.080 to adjust the child support amount it derived from its calculations under NRS 125B.070. Subsection 9 of NRS 125.080 lists 12 factors for the district court to consider when

---

[3]Though *Wright* did not reference NRS 125B.070's legislative history, the calculation articulated in *Wright* is the same formula for joint physical custody that was originally included in the early draft of A.B. 424. *Compare* Hearing on A.B. 424 Before the Assembly Judiciary Comm., Exhibit D, 64th Leg. (Nev., April 13, 1987) ("The court shall, if . . . there is an equal division of the physical custody of a child between both parents, direct the parent whose gross monthly income is higher to pay an amount of support each month which is equal to the difference between his obligation for support and the obligation for support of the other parent . . . ."), *with Wright*, 114 Nev. at 1369, 970 P.2d at 1072 (concluding that in joint physical custody scenarios, the district court must "[c]alculate the appropriate percentage of gross income for each parent; subtract the difference between the two and require the parent with the higher income to pay the parent with the lower income that difference").

 

deviating from the statutory amount of child support. If the court chooses to deviate from the statutory amount of support, "the court *shall* . . . [s]et forth findings of fact as to the basis for the deviation from the formula; and [p]rovide in the findings of fact the amount of support that would have been established under the applicable formula." NRS 125B.080(6)(a)-(b) (emphasis added); *Anastassatos v. Anastassatos*, 112 Nev. 317, 321, 913 P.2d 652, 654 (1996) (stating that "the district court's failure to set forth findings of fact as to the basis for the deviation constitutes reversible error").

*The district court's, parties', and FLS's interpretations of NRS 125B.070*

We are now asked to determine the appropriate allocation of child support where one parent has primary physical custody of one child but both parents share joint physical custody of another child. The district court, parties, and FLS have each interpreted NRS 125B.070 differently, and their interpretations have produced child support awards ranging in amounts from $345 to $832.19. We begin by reviewing the district court's award of child support in this case. Next, we consider the parties' and FLS's varying interpretations of NRS 125B.070.

"Matters of . . . support of minor children of parties to a divorce action rest in the sound discretion of the trial court, the exercise of which will not be disturbed on appeal unless clearly abused." *Flynn v. Flynn*, 120 Nev. 436, 440, 92 P.3d 1224, 1227 (2004) (internal quotation marks omitted). We review a district court's child support determination for abuse of discretion and "will uphold the district court's determination if it is supported by substantial evidence." *Id.* Although a district court has discretion in awarding child support, the district court must follow the statutory guidelines when calculating the initial child support award and

when deviating from the statutory calculations. *See* NRS 125B.080(6); *Wallace v. Wallace*, 112 Nev. 1015, 1021, 922 P.2d 541, 544-45 (1996).

In this case, the district court awarded child support to Leslie in the amount of $345 a month. To explain this award, the district court stated that it had "run the numbers using the statutory percentages of 18% for one child and 25% for two children and given the comparative incomes, the deviation factors permitted under NRS 125B.080(9), and all circumstances, the $345 per month in child support is the appropriate figure."[4] First, it is clear that the district court erred by considering "18% for one child and 25% for two children" because the Millers have two children. Therefore, as discussed above, under NRS 125B.070(1)(b)(2), the district court should have determined each parent's support obligation by calculating 25 percent of each parent's income. In addition to this error, the district court did not state the amount of the support obligation it calculated based on its interpretation of NRS 125B.070, before the deviation. *See* NRS 125B.080(6)(b) (stating that the district court *shall* "[p]rovide in the findings of fact the amount of support that would have been established under the applicable formula").

Finally, the district court did not include in its findings of fact the deviation factors it applied to result in an award of $345, as required by NRS 125B.080(6). Therefore, it is completely unclear how the district court arrived at the amount of $345. Accordingly, we reverse the district court's child support award because of the failure to make sufficient factual findings. *See Davis v. Ewalefo*, 131 Nev., Adv. Op. 45, 352 P.3d 1139, 1142

---

[4]During the hearing, the district court stated that it did not bring the notes showing the calculations for the sum of $345 to the hearing, and no calculations were included in the written order that followed.

(2015) (explaining that, while a district court's discretionary decisions are generally reviewed deferentially, "deference is not owed to . . . findings so conclusory they may mask legal error"). We take this opportunity to consider the appropriate application of NRS 125B.070 to the Millers' particular custody arrangement, as we acknowledge that it is not entirely clear from the statute, given the varying formulas proposed by the parties and FLS.

FLS urges this court to interpret NRS 125B.070 as defining a parent's child support obligation based on each parent's custody arrangement with an individual child. Thus, FLS would calculate Leslie's obligation for support at 18 percent of her income because in its view, she only has a child support obligation for the child she shares jointly with Brett. FLS would then calculate Brett's obligation for support at 25 percent of his income, and offset the two. At the time the parties filed their financial disclosure forms, Leslie indicated that her gross monthly income was $3,986.66 and Brett's gross monthly income was $4,304.97. Thus, Leslie's obligation of support under FLS's method would be $717.60, and Brett's obligation of support would be $1,076.24, which, when offset, results in a child support award of $358.64.

The problem with this method is FLS's starting point for calculating the obligation for support under NRS 125B.070. The plain language of NRS 125B.070 sets forth the parent's obligations of support based on the number of children they have, not based on the custody arrangement.[5] Because a parent's child support obligation based on the

---

[5]We note that neither the parties nor FLS provides authority that allows the district court to calculate a parent's obligation of support under

number of children a parent has is independent of the child custody arrangement, FLS's formula does not align with the plain language of the statute. Not only does FLS's calculation misapply the flat rate percentage defined in NRS 125B.070, it also offsets the awards under *Wright*, which is incorrect where a parent has primary physical custody of a child. *See* 114 Nev. at 1368-69, 970 P.2d at 1072 (offsetting the parents' support obligations when the parents share joint physical custody).

Likewise, Brett's interpretation and one of Leslie's interpretations begin with calculating each parent's obligation of support based on one child, which is contrary to the plain language of the statute.[6]

---

NRS 125B.070 based on the parent's individual custody arrangement with each child. Rather, this application of NRS 125B.070 is contrary to the plain language of NRS 125B.070 and our prior interpretation of the statute in *Wright*.

[6]Step one of these approaches is calculating 18 percent of each parent's gross monthly income: 18 percent of Leslie's income is $717.60, and 18 percent of Brett's income is $774.89.

Under Leslie's approach, her obligation is subtracted from Brett's under *Wright* for the child they share jointly, which equals $57.30. Next, Leslie adds that amount to the full support obligation owed for the child whom she has primary physical custody, $774.49, which results in a child support award of $832.19.

Under Brett's approach, Leslie's obligation is subtracted from Brett's, and then Brett's income is multiplied by 7 percent to account for the difference between 18 and 25 percent in step one. This results in a child custody support award of $358.64. This approach not only incorrectly applies NRS 125B.070, but also incorrectly offsets the two support obligations. Under *Wright*, the district court only offsets the amount of child support when the parents share joint physical child custody. 114 Nev. at 1368-69, 970 P.2d at 1072.

We agree, however, with Leslie's other interpretation, which begins with NRS 125B.070 and applies 25 percent to each parent's income to ascertain each parent's obligation of support. We conclude that this interpretation, which we set forth below, provides the appropriate application of NRS 125B.070 to a custody situation where both parents share joint physical custody of one child and one parent has primary physical custody of the other child.

*Application of Nevada's child support framework to the Millers' custody arrangement*

In order to provide guidance to the district court, we now apply the child support guidelines to the Millers' custody arrangement. The first step in calculating child support is to determine each parent's child support obligation under NRS 125B.070. Here, Leslie and Brett have two children. Therefore, Leslie's and Brett's obligations for child support are 25 percent of their respective gross monthly incomes. NRS 125B.070(1)(b)(2).

Applying the 25-percent obligation for support to each parties' income results in a $996.67 support obligation for Leslie and a $1,076.24 support obligation for Brett. Because this amount is for two children, we conclude that the next appropriate step is to divide the parents' respective support obligations by two to determine the amount of support owed per child. Leslie therefore owes $498.34 per child, and Brett owes $538.12 per child. Because Leslie and Brett share joint physical custody of one child, those amounts are offset pursuant to *Wright*, resulting in Brett owing Leslie $39.78 per month for the child they jointly share. 114 Nev. at 1368-69, 970 P.2d at 1072. Because Leslie has primary physical custody of the other child, the amount of support Brett owes for that child ($538.12) is not offset. Thus, the amount of child support that Brett owes pursuant to NRS

 

125B.070 for both children would be $577.90, which falls within the presumptive maximum amount of support as defined in NRS 125B.070.[7]

After calculating this amount, the district court has discretion to deviate from that amount based on the factors in NRS 125B.080. We reiterate that in doing so, the district court must sufficiently explain its findings of fact, the deviation factors considered, and the amount of the child support award absent any deviation. *See* NRS 125B.080.

## *CONCLUSION*

This case requires that we consider the appropriate application and interpretation of NRS 125B.070 to a child custody arrangement where both parents share joint physical custody of one child but one parent has primary physical custody of the other child. We conclude that based on

---

[7]We note that if Leslie and Brett had only one child for whom Leslie had primary physical custody, Brett's child support obligation would be 18 percent of his gross monthly income, or $774.80 per month. *See* NRS 125B.070(1)(b)(1). Based on our interpretation of NRS 125B.070 as it currently exists, Brett's child support obligation in this case for two children should be $577.90. Thus, we recognize this anomaly since the framework of NRS 125B.070 demonstrates that a parent's obligation of support increases with each additional child. Though a parent's obligation increases, it does not double with each additional child because some of the costs involved with child-rearing are fixed costs. *See Barbagallo*, 105 Nev. at 549, 779 P.2d at 535 (noting that some of the fixed expenses involved in child-rearing include "rent, mortgage payments, utilities, car maintenance and medical expenses"). Moreover, Brett's support obligation accounts for the fact that he shares joint physical custody of one of the children. This case and the parties' divergent arguments and calculations demonstrate this is an important issue for the Committee to Review Child Support Guidelines to consider. Because NRS 125B.070 does not address the split custody situation presented by this case, the approach we set forth provides a clear and workable formula that is consistent with our prior jurisprudence, and the district court has discretion to increase this statutorily based amount if it finds a deviation proper under NRS 125B.080.

Nevada's child support statutes and our jurisprudence, the proper calculation under NRS 125B.070 is to first determine each parent's support obligations based on the flat rate percentage correlated with the number of children the parents have. Next, the support obligation should be divided based on the number of children the parents have. After the support obligations are determined, the parents' obligations are offset for any children they share jointly pursuant to *Wright*, and the offset amount shall be added to the full amount of the child support obligation for the non-custodial parent. The district court must still ensure that the amount does not exceed the presumptive maximum support amount in NRS 125B.070(2). Finally, if the district court finds it appropriate, it shall apply the deviation factors in accord with NRS 125B.080 and, in doing so, make sufficient factual findings to explain the deviation. Accordingly, we reverse the district court's child support award of $345 and remand with the foregoing instructions.

_____, J.
Hardesty

We concur:

_____, C.J.
Douglas

_____, J.
Gibbons

_____, J.
Parraguirre

_____, J.
Cherry

_____, J.
Pickering

_____, J.
Stiglich

