**138 Nev., Advance Opinion 14**

## IN THE SUPREME COURT OF THE STATE OF NEVADA

LILLIAN LACY HARGROVE,
Appellant,
vs.
THOMAS REID WARD,
Respondent.

No. 81331

**FILED**

MAR 24 2022

ELIZABETH A. BROWN
CLERK OF SUPREME COURT
BY_____
CHIEF DEPUTY CLERK

Appeal from a district court order denying a request for child support. Eighth Judicial District Court, Family Court Division, Clark County; Bill Henderson, Judge.

*Affirmed in part, reversed in part, and remanded.*

Breeden & Associates, PLLC, and Adam J. Breeden, Las Vegas,
for Appellant.

Roberts Stoffel Family Law Group and Amanda M. Roberts, Las Vegas,
for Respondent.

_____

BEFORE THE SUPREME COURT, PARRAGUIRRE, C.J., STIGLICH and SILVER, JJ.

## OPINION

By the Court, STIGLICH, J.:

This appeal asks us to determine for the first time whether a district court may award retroactive child support in a paternity action initiated after the child reached the age of majority. We additionally

22·09207

consider the circumstances under which a parent's promise to support a child is enforceable.

NRS 125B.030 provides that the physical custodial parent of a child may recover from the parent without physical custody child support for 4 years immediately preceding the filing of a support action. The statute is silent on whether a parent can file for retroactive child support under NRS 125B.030 for the first time after the child has reached the age of majority. We answer that one may, holding that the 3-year statute of limitations to bring a paternity action after the child reaches the age of majority applies to a parent's request for retroactive child support. Accordingly, we reverse in part the district court's order and remand for further proceedings. We also determine that a promise in writing to support a child is enforceable under NRS 126.900(1) when the writing sets forth a clear commitment to provide support in specific terms. As the district court correctly determined that no written promise was made here, we affirm as to the district court's denial of child support under NRS 126.900(1).

## FACTS AND PROCEDURAL HISTORY

Appellant Lillian Hargrove and respondent Thomas Ward were never married but had one child together as a result of their relationship. The parties' son, G.W., was born on December 3, 1999. Paternity is not disputed by the parties, and Ward is named as the father on G.W.'s birth certificate. The parties never obtained a formal custody or child support order during G.W.'s minority. After Hargrove and G.W. moved to Las Vegas in 2009 and Ward remained in the Lake Tahoe area, Ward had only minimal involvement in G.W.'s life. Hargrove alleged that the parties agreed at that time that instead of Ward paying child support, he would visit G.W. and remain actively involved in G.W.'s life. Hargrove alleged that in April 2012 the parties verbally agreed that Ward would deposit $400 per month into

Hargrove's bank account for the support of G.W. Ward disputes that the parties ever agreed to do so.

On March 12, 2019, 1 year and 3 months after G.W. turned 18, Hargrove filed a paternity action against Ward in order to seek back child support. Hargrove asked the district court to recognize the parties' agreement for $400 a month under NRS 126.900(1). Alternatively, Hargrove argued that even without an agreement, under NRS 125B.030, she was entitled to retroactive child support. The district court concluded that it did not have the legal authority to grant post-emancipation child support. Hargrove subsequently appealed.

## DISCUSSION

### Ward did not make an enforceable promise under NRS 126.900(1)

We first consider Hargrove's argument that she had an enforceable agreement with Ward for a monthly support payment under NRS 126.900(1).[1] Hargrove argues that Ward agreed to pay her child support of $400 monthly beginning in 2012.

This court reviews a district court's order regarding a child support determination for an abuse of discretion. *Miller v. Miller*, 134 Nev. 120, 125, 412 P.3d 1081, 1085 (2018). "Questions of statutory construction, including the meaning and scope of a statute, are questions of law, which we review de novo." *Id.* at 122, 412 P.3d at 1083 (alterations and internal quotation marks omitted). This court will defer to and uphold the district court's findings that are not clearly erroneous and are supported by substantial evidence. *Ogawa v. Ogawa*, 125 Nev. 660, 668, 221 P.3d 699, 704 (2009).

---

[1]NRS 126.900 was substituted in revision for NRS 126.371 in 2013.

NRS 126.900(1) provides that "[a]ny promise in writing to furnish support for a child, growing out of a supposed or alleged parent and child relationship, does not require consideration and is enforceable according to its terms." The construction of this statute is a matter of first impression. When a statute's language is unambiguous and its meaning is clear, interpreting courts may not look beyond the statute itself. *State, Div. of Ins. v. State Farm Mut. Auto. Ins. Co.*, 116 Nev. 290, 293, 995 P.2d 482, 485 (2000). If a statute is ambiguous, however, courts may consider "other sources such as legislative history, legislative intent and analogous statutory provisions." *Id.* at 294, 995 P.2d at 485.

Specifically at issue here is the meaning of "promise in writing." We conclude that this phrase is unambiguous as used in the statute. A "promise" states an intent to act in a particular manner and a willingness to be bound to do so. *Promise, Black's Law Dictionary* (11th ed. 2019) (defining promise as "[t]he manifestation of an intention to act or refrain from acting in a specified manner, conveyed in such a way that another is justified in understanding that a commitment has been made; a person's assurance that the person will or will not do something"). And a "writing" is a tangible recording of an expressed statement. *Writing, Black's Law Dictionary* (11th ed. 2019) ("Any intentional recording of words in a visual form, whether in handwriting, printing, typewriting, or any other tangible form that may be viewed or heard with or without mechanical aids.").

Hargrove argues that NRS 126.900(1) should be interpreted to create a mechanism to enforce informal agreements. We disagree. Nothing in the statute supports this interpretation. The statute specifically forecloses a consideration requirement, NRS 126.900(1), and the Legislature could have directed that informal commitments were

Supreme Court
of
Nevada

(O) 1947A

enforceable under this statute had it intended to, *see Ramacciotti v. Ramacciotti*, 106 Nev. 529, 531, 795 P.2d 988, 989 (1990) (concluding that the Legislature did not intend a requirement that it could have included in the relevant statute but did not). The statute also provides that a promise within its ambit "is enforceable according to its terms," implying that such a promise must specifically set out the terms committed to, rather than encompassing informal agreements. *See* NRS 126.900(1). And the legislative history further disfavors Hargrove's claim, as the deputy attorney general describing the bill explained that this statute serves to make enforceable an agreement where a parent "will end up signing a promise to support," with no discussion of more casual arrangements. Hearing on S.B. 294 Before the Assemb. Judiciary Comm., 60th Leg., at 6 (Nev., May 2, 1979); *see also* 1979 Nev. Stat., ch. 599, § 24, at 1276-77 (enacting S.B. 294, later codified as NRS 126.900).

Hargrove argues that text messages over a period of 11 months, banking records, and her testimony show Ward's promise in writing to make monthly support payments.[2] The district court found that Ward did not undertake a legally binding obligation. Substantial evidence supports the determination that Ward did not promise to make ongoing payments, which is not clearly wrong. First, we observe that neither the banking records nor Hargrove's testimony supports Hargrove's claim, as neither demonstrates Ward's expression of intent to act in a particular manner. While either may be evidence of an agreement, neither shows a promise by Ward or a writing memorializing it. And while a text message may constitute a "writing," the

---

[2]To the extent that Hargrove argues that she had an oral agreement with Ward that was enforceable under NRS 126.900(1), the claim fails, as the statute does not encompass any commitment not in writing.

text messages between Hargrove and Ward in the record here do not demonstrate a "promise" to make ongoing support payments. In a May 15, 2013, message, Hargrove described "this offer": payment of $300 by the 4th of each month. Ward never specifically responded to that "offer." The text messages cannot be said to contain Ward's promise to act in accordance with those terms.[3] In other text messages, Ward did not state an intent to make ongoing payments in such a manner that specific terms of that commitment might be ascertained and enforced. In sum, the text messages in the record do not show a tangible statement by Ward committing to act in the particular manner that Hargrove alleges. And as no promise was expressed, we need not consider the requirement that the promise relates to a parental relationship. *Cf.* NRS 126.900(1) (requiring the promise to be "growing out of a supposed or alleged parent and child relationship"). The district court therefore did not abuse its discretion in denying Hargrove's NRS 126.900(1) claim, and we affirm its order denying relief in part.

*NRS 125B.030 permits the recovery of retroactive child support after the child reaches the age of majority*

While Hargrove may not recover under NRS 126.900(1), we hold that a parent may file for retroactive child support after a child has

---

[3]In an August 4, 2013, text message, Hargrove asked, "Are you going to be able to deposit money tomorrow?" and Ward responded, "Yes." This arguably constitutes a "promise in writing" under NRS 126.900(1), though it does not indicate amount or show the more extensive promise Hargrove alleges. It appears that Ward made a corresponding deposit to satisfy this promise.

In two other messages, Ward commits to send money "as soon as i [sic] can" or in "a bit." These commitments are too vague to fall within the statute's scope because they lack terms specific enough to be "enforceable according to [their] terms." NRS 126.900(1).

reached the age of majority under NRS 125B.030. NRS 125B.030 provides that,

> [w]here the parents of a child do not reside together, the physical custodian of the child may recover from the parent without physical custody a reasonable portion of the cost of care, support, education and maintenance provided by the physical custodian. In the absence of a court order for the support of a child, the parent who has physical custody may recover not more than 4 years' support furnished before the bringing of the action to establish an obligation for the support of the child.

NRS 125B.030 does not limit when an action for support of the child may be brought. Instead, the statute limits the *recovery* for retroactive child support to the 4 years immediately preceding the action.

This is not to say, however, that there is no limit on when a parent may bring an action for retroactive child support. NRS 126.081(1) provides that an action to establish paternity "is not barred until 3 years after the child reaches the age of majority." And NRS 126.161(4)(a) provides that a judgment or order establishing paternity "*may* . . . [c]ontain any other provision directed against the appropriate party to the proceeding, concerning the duty of support." (Emphasis added.) Thus, it appears that NRS Chapter 126 contemplates the imposition of retroactive child support obligations in paternity actions filed within 3 years after the child attains the age of majority.

Other jurisdictions have established that retroactive child support may be awarded in timely filed paternity actions. For example, in *Carnes v. Kemp*, 821 N.E.2d 180, 182 (Ohio 2004), the issue was whether "a court ha[s] subject-matter jurisdiction to award retroactive child support payments in a paternity action initiated after the child has reached the age

of majority." (Internal quotation marks omitted.) The Supreme Court of Ohio concluded it does, reasoning that because an individual is statutorily authorized, in Ohio, to bring a paternity action up to 5 years after the child reaches the age of 18, and because a court has authority to order support after paternity is established, a court has the authority to order retroactive child support in an action commenced before the child turns 23. *Id.* at 184.

The New Mexico Court of Appeals held the same, reasoning that "[i]t is not logical to apply a more lenient statute of limitations to a paternity action but then apply a stricter limitations period to the child's cause of action to seek support." *Padilla v. Montano*, 862 P.2d 1257, 1263 (N.M. Ct. App. 1993). "A paternity proceeding is a civil action to compel a putative father to support his child," and the purpose of the statute will not be met if a "child is [not] afforded a reasonable length of time in which to secure the support which is due[;] a determination of paternity [alone] is of limited value." *Id.* at 1262-63; *see also Campagna v. Cope*, 971 So. 2d 243, 248 (Fla. Dist. Ct. App. 2008) (declining to limit retroactive child support to actions filed while the child is a minor because the plain language of the statute does not contain such limiting language).[4]

---

[4]Although some of these cases may be distinguishable in that a child brings the action for child support instead of a parent, NRS 126.071(1) provides that "[a] child, his or her natural mother, a man presumed or alleged to be his or her father or an interested third party may bring an action . . . to declare the existence . . . of the father and child relationship." *See also Campagna*, 971 So. 2d at 248 (concluding that if a parent supported a child in his or her minority, "the parent maintains his or her standing to recover the other parent's share of any" retroactive child support).

SUPREME COURT
OF
NEVADA

(O) 1947A

We agree with this reasoning and hold that an action for retroactive child support may be maintained after a child has reached the age of majority. Thus, because a parent may bring a paternity action up to 3 years after the child reaches the age of majority, and because a court may order a parent to pay child support after paternity is established, we hold that a parent has 3 years after the age of majority to seek retroactive child support.

## CONCLUSION

Here, Hargrove brought the paternity action on March 12, 2019, 1 year and 3 months after G.W. turned 18, within the period permitted by NRS 126.081(1). Thus, her request for retroactive child support was timely. As Hargrove was permitted to bring a paternity action, she was correspondingly permitted to seek retroactive child support. The district court therefore abused its discretion by concluding that it did not have the authority to grant retroactive child support.[5] Ward, however, did not make a promise in writing to make monthly support payments, and the district court therefore correctly denied Hargrove's NRS 126.900(1) claim.

---

[5]We reject Ward's numerous arguments in opposition. Although NRS 125B.050(1) uses the term "minor child," Ward does not cogently argue how that term correlates to NRS 125B.030's language. *See Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (providing that this court need not consider claims that are not cogently argued or supported by relevant authority). Further, although NRS 126.161(3) requires the inclusion of child support in a paternity order if the child is a minor, it does not provide that one is *prohibited* if the child is not a minor. Instead, the broad language of NRS 126.161(4)(a) provides that an order "*may*" include "any other provision . . . concerning the duty of support." (Emphasis added.)

Accordingly, we affirm in part, reverse in part, and remand for further proceedings.

_____ , J.
Stiglich

We concur:

_____ C.J.
Parraguirre

_____ , J.
Silver

SUPREME COURT
OF
NEVADA

(O) 1947A